Mr. Justice Cox
delivered the opinion of the court.
The history leading to this litigation may be stated in a very few words. Wm. Hogan, sr., who was the father of the female complainants and of the defendant, was the owner of a tract of land situated in Australia. In 1856 he employed the defendant, his son, to go to that country, with powers of attorney authorizing him to manage the property and make sale of it. When he first went, his absence was intended to be only a temporary one, but it turned out that he remained a number of years in that country. He collected rents from property and made sales, and out of these moneys made sundry disbursements and remittances to his father. He rendered accounts from time to time, and finally the transactions were closed up in 1865 by the son’s taking, himself as purchaser, the undisposed of balance of the land, at a price agreed on between the father and son; and then the son rendered a final account to the father embracing all the transactions from the beginning. He remained in that country several years after that, and did not *521 return until 1871. In December, 1871, and in January, 1872, he had settlements with his father of these unsettled accounts, which. resulted in his father passing to the defendant his notes for the balance then supposed to be due, to the amount of $8,315.41. In the middle of the year 1872, the father fell into a condition of helpless infirmity, but lingered on until 1874 when he died. The defendant then took out letters of administration upon his personal estate, and when he presented his first account for ■ settlement in the Orphans’ Court, he claimed a credit in that account for the amount of these notes, as a debt due to him from the deceased. Two of his sisters, Mrs. Gaines and Mrs. Mercer, appeared in court and filed exceptions to the account on behalf of themselves and the other distributees of the personal estate. It appears that Mrs. Kearney, a third sister, had authorized Mrs. Gaines to act for her in this proceeding also, and it is so testified in depositions taken in the Orphans’ Court, and a letter from Mrs. Kearney to Mrs. Gaines to that effect is on file in the proceedings of that court.
The exception which relates to this particular item is, “they except to the credits claimed by the administrator in vouchers one and two, consisting of five notes amounting to $8,315.41.” They claim that the -notes were obtained from the intestate at a time when, from infirmity of body and mind, he was incapable of doing business and that they were obtained without a legal consideration.
This exception, which is one of several to the admission of the account, raised the whole question of the balance due upon the account between the father and the son. Upon the application of the exceptants, the case was referred to Mr. J. J. Johnson to take testimony and report. Very voluminous depositions were taken, and he reported that the account was correct, that the father was capable of making this settlement, and, upon discussion in that court and a review of the whole proceeding, the court directed the account to be allowed and overruled the exception. An appeal was taken from that decision to this court and an order passed fixing the appeal bond at $250, but no further step *522 was taken afterwards in that proceeding. The date of the order overruling the exception was October 30, 1877.
On May 26, 1878, the same parties who had excepted in the Orphans’ Court filed their bill in this court, calling upon the defendant for an account of his agency in Australia, charging that he had not rendered a true account, that he ivas not entitled to credits claimed hy him, &c., all of which opened up the precise question which was under discussion in the Orphans’ Court and on which that court had pronounced a decision. The defendant at first demurred, and that being overruled, he then filed an answer in which lie responded to the various allegations of the hill, and also set up as conclusive of this question, and as res adjudicata, the determination of it in the Orphans’ Court. If his position in that respect be well taken, it blocks all further inquiry and it brings us at once to the consideration of the question how far the decision of the Orphans’ Court is conclusive of a controversy in that court — a question of very great importance and one which does not seem to have been at all definitely settled.
We are forced, therefore, to examine into the statutes relating to the jurisdiction of that court. We find that the act of 1798, ch. 101, sub-ch. 15, section 12, provides that “The Orphans’ Court shall have full power, authority and jurisdiction to examine, hear and decree upon all accounts, claims and demands existing between wards and their guardians, and between legatees or persons entitled to any distributable part of an intestate’s estate, and executors and administrators, and may force obedience to and execution of their decrees in the same ample manner as the court of chancery may.”
Now it must be admitted that this language is as comprehensive and as strong in conferring jurisdiction as any that ever was used in reference to any court. It is to have “full power, authority and jurisdiction to examine, hear and decree upon all accounts, claims and demands existing between wards and their guardians, and between legatees or distributees and executors and administrators.” *523 Wlrat is a claim between executors and administrators on tbe one hand and distributees on the other? This term will include, first, the claims filed by distributees themselves to personal estate to be distributed among them, and claims by the executor or administrator on that estate, and, therefore, against the distributees. What is an account between the administrator or executor and distributees? It is an account in which the administrator charges himself with his receipts, and claims credit, first, for expenses of the estate, and, in the next place, for claims against the estate which he has paid, or which have been duly vouched and presented to him for payment. Now, in determining upon these questions of account between the administrator and distributees, the court is necessarily called upon to determine what claims the administrator is authorized to pay. It is true that our statute does not confer upon the Orphans’ Court any power to adjudicate a ■ controversy directly between a third person who- is a creditor and an administrator. When a claim is presented, properly vouched, against the estate, the judge does indorse it, that il it will pass when paid.” This simply means that the court will allow it as a credit in the administrator’s accounts if he chooses to pay it; but a court has no power to decree that an administrator shall pay a third person a claim against the estate, nor that it shall not be ultimately paid. It has power, however, to determine whether the administrator will have credit in his accounts for the payment of a designated claim. But in this respect, under that statute, a claim which the administrator himself has against the estate is put on the same footing as all other claims.
There is, however, this distinction to be observed between a claim by an administrator against the estate as a creditor, and a claim by a third person. If the administrator chooses to dispute the claim of another creditor, it must be asserted in a court of common law or equity, but it is difficult to see exactly how the claim of an administrator on the personal estate can be determined otherwise than by presenting it *524 as a credit in his account. He cannot sue himself either at common law or equity. He cannot sue the distributees unless he is seeking to enforce his claim against real assets in their hands, as lands, &c. An action by an administrator against distributees to recover a claim out of the personal estate in his own possession, is something I never heard of.
So that it does not seem that there is any other way in which an administrator can have his own claim against an estate adjudicated, as between himself and distributees, than by presenting it as a credit in his accounts of administration. But whether that be so or not, it is very plain that he may present a claim in that way, and when it is so presented it is within the jurisdiction of the court to determine whether he shall have credit in the account for his individual claim.
I find there are three cases in which such claim, by an administrator or executor; was the subject of adjudication in which it was assumed as a matter of course, without dispute, that it was a proper subject for determination in the Orphans’ Court in the settlement of administrator’s accounts. One is the case of Nicholls vs. Hodge, in 2 Cranch, C. C., 582; another, Stockett vs. Jones, in 10 Gill & Johnson, 276; and another, Cover vs. Stockdale, 16 Maryland Reports, 10.
On this branch of the case then, we conclude that the court has full power, authority and jurisdiction to examine, hear and decree upon a credit claimed by an administrator in the settlement of his accounts for an individual claim of his against the deceased.
It will be further observed that the court is provided with the most ample apparatus for the most exhaustive examination and determination of questionsof thiskindfalling within its scope and jurisdiction. Section 16 of the same act provides that: “Whenever either of the parties having a contest in the Orphans’ Court shall require, the said court may direct a plenary proceeding, by bill or petition, to which there shall be an answer on oath (or affirmation) and if the *525 party refuse to answer on oath (or affirmation as the case may require) to any matter alleged in the bill or petition and proper for the court to decide upon, the said party may be attached, fined and committed,” &c. Sec. 17 of the same act provides: “ And on such plenary proceeding all the depositions shall be taken in writing and recorded ; and in case either party shall require, the court shall direct an issue, or issues, to be made up and sent to any court of law which may be most convenient, under all circumstances, for trying the same; and the said issue or issues shall be tried in the said court of law as soon as may be, without any continuance longer than is necessary to procure the attendance of a witness or witnesses; and the' power of the court of law and the proceedings thereto relative, shall be, as hereinbefore directed,- respecting the trial of issues; and the Orphans’ Court shall give judgment or decree upon the bill and answer, or upon bill, answer, depositions or finding of the jury,” &c. So, also, section 18 jorovides that “Anyperson who may conceive himself aggrieved by any judgment, decree, decision or order of the Orphans-’ Court, shall have the liberty of appealing to the Court of Chancery, or to the General Court of the shore wherein such Orphans’ Courtis held; if the judgment, decree, decision or order shall have been given or made on a summary proceeding, and on the testimony of witnesses, the party shall not be allowed to appeal, unless he or she shall immediately notify his intention, ánd request that the testimony may be reduced to writing; and in such case the depositions, at the cost of the party, in the first instance, shall be reduced to writing; and a transcript of the whole proceedings relating immediately to the matter shall be made out by the register of wills,” &c., &c., “and transmitted to the said appellate court by the party within 80 days from the date of the decision or order, the said party shall otherwise lose the privilege of appeal; and if the decision of the Orphans’ Court be in a summary way, and on papers filed in the court, no party shall be entitled to an appeal unless he or she enters the appeal within three, days, and transmits a certified.copy of *526 the proceedings as aforesaid within 30 days aforesaid; but in case there shall have been plenary proceeding as aforesaid, either party may prosecute the appeal by entering the same as aforesaid, and by transmitting a certified copy as aforesaid within 60 days from the date of the decree, judgment, decision or order,” &c.
Now, it will be observed that in determining a controversy there are two modes of proceeding; first, a plenary proceeding, which is only another term for a formal proceeding in which the allegations of both parties are reduced to writing in the shape of a petition, and a sworn or affirmed answer, and dejDositions taken in writing, just as in a court of chancery. The other is a summary proceeding, which is simply where the court hear the allegations of the parties orally, and decide in a summary way, either upon written documents in the cause or upon the oral testimony of witnesses. It will be seen that either party has the right to convert the summary into a plenary proceeding upon demand, and then the proceedings are reduced to writing. Then a trial by jury is provided for, an appeal is provided for, and in respect to the privilege of an appeal, and in respect to the effect of the decision and the judgment of the ourt, it does not appear that there is the slightest difference between the plenary and the summary proceedings. The act implies, unavoidably, that the contest may be as well in a summary proceeding as in a plenary one, because it says, in reference to the right of appeal, that “any person who may conceive himself aggrieved by any judgment, decree, decision or order,” &c., shall have liberty of appeal, and “if the judgment, decree, decision or order shall have been given or made on a summary proceeding,” such and such measures shall be taken. Although it assumes that the contest inter partes is inaugurated and a decree authorized, whether the proceeding be a plenary or summary one.
Now, this was the law when the Orphans’ Court constituted an entirely distinct forum from the appellate court when the old Circuit Court was in existence, and for a certain period after the creation of the present court. But sine® *527 that time, since the reorganization of this court, the Orphans’ Court is to be considered as only a special term of this court. Appeals are provided for from that court to this in General Term, so that in all respects it stands on the same footing as the special term for equity business or the circuit court. The question naturally arises why should not a decree of the Orphans’ Court, rendered in a contest, have the same effect as a decree of the court in special term held for equity business or a judgment of the circuit court. A doubt on this subject grows out of the peculiarity of proceedings in the Orphans’ Court and certain decisions in Maryland in reference thereto. When an administrator files his administration account that is not the commencement of a contest. Ordinarily the court requires a notice to be published to all parties in interest that an account will be stated and distribution made on a certain day. It issues no process, and that notice is no process. Parties in interest may choose to ignore the whole proceeding and may not come in. If they do not come in the proceeding is entirely ex parte, and the Court of Appeals of Maryland has in repeated cases decided that in a court of equity or court of chancery, or in a common law court, when the proceedings of the Orphans’ Court of an ex parte character are brought in question they are only prima facie evidence, and not conclusive of the matter contested.
But we have not been referred to any case; no case has been decided in Maryland, and no case, that I am aware of, in any other State, to the effect, that a decree or judgment of the Orphans’ Court in a contested matter has not the same force and effect as the decree of any other court in a contest inter partes. All the decisions that have been brought to our attention and that we have been able to discover, are in the opposite direction. As far back as 1838, we find the case of Lupton vs. Janney, 5th Cranch Circuit Court Reports, 478, in which -it appears that a bill in equity was filed to open an executor’s accounts after they had been settled more that 12 years in the Orphans’ Court, by the residuary legatees. That was a case *528 of ex parte settlement. But the court after considering this question thoroughly, after discussing the powers of the Orphans’ Court said:
“This is a peculiar and exclusive original jurisdiction. An original bill in this court to compel executors to account with a residuary legatee not necessarily connected with any other ground of equitable jurisdiction, is a bill asking that which originally belongs exclusively to the Orphans’ Court to do. It is a part of its ordinary duty to ascertain and distribute the surplus, or residuum of the estate, and for that purpose to settle the administration ac-s count. When that account necessarily and incidentally comes before this court, either as a court of equity or of law, in a suit of which this court has original jurisdiction, the ex parte settlement by the Orphans’ Court would probably be taken to be prima facie correct, but the opposing party would have a right to surcharge and falsify, and the court would open it for that purpose; but if th§ settlement had been made by the Orphans’ Court in a contested case between the same parties, it would probably be deemed by this court conclusive until it should be reversed upon appeal.”
A similar question arose in the circuit court of the United States, before Justice Washington, then a member of the Supreme Court, in the case of Blount vs. Darrach, 4 Washington C. C. R., 659, which was the case of an effort to unsettle a guardian’s account, which stands on the same footing as an administrator’s account, by a bill in equity. Justice Washington there said: “The single question which arises upon the facts stated in the plea is, whether the account of the guardianship of James Darrach, which, by the decree of this court, was allowed and confirmed, is conclusive or not, so as to be a bar to the discovery and relief sought to be enforced by this bill. The general principles of law in respect to the conclusiveness of the judgments and decrees of the domestic tribunals of the country are well settled and perfectly intelligible. A judgment or decree of a. court of competent jurisdiction, directly up *529 on the point, is conclusive between the same parties, or their privies, upon the same matter, coming directly in question in another court of competent jurisdiction. The rule is founded upon consideration as well of abstract justice as of public policy, which forbids the litigation of any matter which has been once fairly determined by proper and competent authority between the same parties, or those standing in the relation of privies to them. If the matter or the parties be different, the former judgment, if admitted in evidence at all, as in particular cases it may be, can be so only as prima facie evidence, but not conclusive. And so extensive and universal is this principle, that it includes the judgments or determinations of tribunals having competent authority to decide, whether they be of record or not. Where the matter adjudicated is-by a court of peculiar and exclusive jurisdiction, and the same matter comes incidentally before another court, the sentence of the former is conclusive upon the latter, as to the matter directly decided, not only between the same parties, but against strangers.”
Then he examines the statutory jurisdiction conferred on the Orphans’ Court and says (p. 660), “ upon a view of the above provisions respecting the Orphans’ Court, I could not entertain a doubt were the question before me for judgment for the first time, that that court has jurisdiction to settle and to allow or confirm the accounts of guardians, and finally to decide upon the different items of those accounts, subject to the reversing and correcting jurisdiction of the Supreme Court.”
Then he goes on to say that the same parties appeared in the case, and the decision of the Orphans’ Court must be regarded as conclusive.
In 1861, the case of Sparhawk vs. Buel, occurred in 9th Vt., p. 41, in which this same question was considered. And so in McKinney’s Administrator us. Davis. This case arose under a statute which empowered the Orphans’ Court to adjudge between a creditor and administrator. And the same principle is asserted in the case of McDougal vs. Rutherford, *530 in 30th Ala. Rep., 253. There is also the case of Clarke vs. Callaghan, 2 Watts, 259, and the case of Bryant vs. Allen, 6 N. H., 116, to the same effect.
So that all the authorities which have been brought to our attention and which I have been able to find myself, unite in conceding the same authority to the decree© of an orphans’ court or court of probate, in a contested matter, as they do that of any other court.
The question brought before us in the bill and answer in this case is the identical question brought before the Orphans’ Court, on which a decree was rendered and from which decree an appeal was noted. In our judgment the only way to prosecute that investigation was to prosecute that appeal. That not having been done, the decree helow has the same conclusive effect on this question as if the appeal had been taken, and the decree been affirmed here. That being our view of the operation of that statute and the effect of this decree, the defence is complete without going into the merits of the controversy between the parties as to the merits of the account. We are,. therefore, of the opinion that the decree below must be affirmed.