# HUTCHINS v. HUTCHINS.

EXECUTORS AND ADMINISTRATORS; SOURCE OF AUTHORITY; UNSUCCESSFUL DEFENSE OF WILL; ALLOWANCE OF COUNSEL FEES; REPEAL OF STATUTE.

1. Under sec. 116 of D. C. Code (31 Stat. at L. 1208, chap. 854), giving the supreme court all the powers and jurisdiction of the orphans' court of Washington county, District of Columbia, under the Maryland Act of 1798, subchap. 15, sec. 17, which provided that upon the trial of any issues, the orphans' court might award costs to the party in their opinion entitled thereto, the supreme court, sitting as a probate court, has power to grant an allowance to executors from the assets of the estate for counsel fees and costs incurred in unsuccessfully defending the validity of the will.

2. An executor, unlike an administrator, derives his authority from the will, and not from the probate court, and becomes vested with his interest in the estate of the deceased from the moment of the testator's death. (Citing Sinnott v. Kenaday, 14 App. D. C. 1; and Tuohy v. Hanlon, 18 App. D. C. 225.)

3. Subchapter 15, sec. 17, of the Maryland Act of 1798, conferring power upon the orphans' court to award costs to the party in their opinion entitled thereto, is not repealed by implication by sec. 143 of D. C. Code (31 Stat. at L. 1214, chap. 854), providing that the supreme court, which was given the powers theretofore possessed by the orphans' court, shall have authority to render judgment for costs against the unsuccessful party in any proceeding.

No. 2888.　Submitted December 2, 1918.　Decided January 6, 1919.

HEARING on an appeal from an order of the Supreme Court of the District of Columbia, sitting as a probate court, dismissing a petition filed by the executors named in a will for counsel fees and costs incurred for propounding the will for probate, where probate was denied.

*Reversed and remanded.*

NOTE.—On right of executor to allowance for attorneys' fees for services rendered in attempt to establish or resist attack upon will, see notes in 26 L.R.A. (N.S.) 757, and L.R.A.1917A, 450.

The Court in the opinion stated the facts as follows:

This appeal is from decrees entered in the supreme court of the District of Columbia dismissing a petition filed by appellants, Walter Stilson Hutchins and Charles L. Frailey, two of the executors named in what purported to be the last will and testament of Stilson Hutchins. In the petition they prayed for a proper and reasonable allowance to be made to them from the assets of the estate for counsel fees and costs incurred in propounding the will for probate, and in defending the will in a proceeding to have it set aside.

A caveat filed by Lee Hutchins, a son of the testator, alleged that testator was not of sound and disposing mind, nor capable of executing a valid deed or contract at the time the paper writing was executed; that the execution thereof was procured by importunities, persuasions, misrepresentations, and undue influence practised upon testator which he was at the time too enfeebled in body and mind to resist; and that the execution of said paper writing was not the free and voluntary act of decedent.

By order of court, the proponents were required to submit proof of the execution of the document in due form of law, which was done. The court then framed the issues for trial to a jury on the following grounds: (1) testamentary capacity; (2) undue influence; and (3) misrepresentations. By a further order of the court, Lee Hutchins, the caveator, was made plaintiff, and appellants, proponents, were made defendants. The jury returned a verdict in favor of plaintiff on the issue of testamentary capacity, and in favor of defendants on the issues of undue influence and misrepresentation.

The court below, in dismissing appellants' petition, decreed that "each party, caveator and caveatees, pay their own costs." In support of the decree the trial justice, in his opinion, expressly held "that the section of the Code providing that costs might be awarded against the unsuccessful party indicated a legislative intention that costs might or might not be awarded against the unsuccessful party, in the discretion of the court;

but that costs should not be awarded in favor of the unsuccessful party." The court then stated that, even if it had the discretion to allow the expenses of the caveatees, it would not do so, for the reason that "this litigation is a contest between two brothers, Lee Hutchins and Walter Hutchins; and as this case is situated I see no reason why each party should not pay his own expenses of this proceeding." The opinion, however, concludes with the statement that, "if it were possible for the court to allow the expenses of both sides of this litigation out of the estate, then a different question would be presented, and something might be said in favor of the view that the expenses of the caveatees and of the caveator as well ought to be allowed out of the body of the estate. But as I understand the law in this jurisdiction that could not be done. If it could be done, the question would arise whether or not that would be just to the widow and to the other heir of this estate." The conclusion, therefore, reached by the trial justice, after theorizing as to what he would do if endowed with discretion to allow the costs, is that, under the law in this jurisdiction, no such power exists.

*Mr. A. A. Hoehling, Jr., Mr. Stanton C. Peelle,* and *Mr. C. F. R. Ogilby,* for the appellants, in their brief cited:

(1.) A person named as executor has not only the right, but it is his duty, to propound a will for probate and to defend it if attacked; and the reasonable costs and expenses of the probate proceeding are chargeable to the estate of such decedent irrespective of the result of the will contest. *Carman's Will,* — Iowa, —, 48 N. W. 985; *Douglas* v. *Yost,* 18 N. Y. Supp. 830; *Dries's Estate,* Admn. No. 18,560; *Olmstead's Estate,* 120 Cal. 440; *Pritchard's Estate,* 30 Wash. L. Rep. 9; *Soulard's Estate,* 141 Mo. 642; *Fillinger* v. *Conley,* 163 Ind. 584; *Glass* v. *Ramsey,* 9 Gill. 457; *Hamilton* v. *Shillington,* 19 App. D. C. 278; *Hazard* v. *Engs,* 14 R. I. 8; *Henderson* v. *Simmons,* 33 Ala. 299; *Re Downie,* 42 Wis. 66; *Re Jackman,* 26 Wis. 374; *Kengla* v. *Randall,* 22 Wis. 464; *Lassiter* v.

*Davis,* 98 Tenn. 330; *McIntire* v. *McIntire,* 14 App. D. C. 350; *Meeker* v. *Meeker,* 74 Iowa, 352; *Miller* v. *Gehr,* 91 Md. 709; *Perkins* v. *Perkins,* 116 Iowa, 253; *Phillips* v. *Phillips,* 81 Ky. 328; *Pingree* v. *Jones,* 80 Ill. 177; 2 Redf. Wills, p. 112; 1 Schouler, Wills, §§ 1052, 1064; *Shaw* v. *Camp,* 56 Ill. App. 23; *Tuohy* v. *Hanlon,* 18 Ill. App. 228; *Wills* v. *Spraggins,* 3 Gratt. 542;

(2) The probate court has authority to make the allowance claimed herein, out of the assets of the estate, for costs, expenses, and counsel fees incurred in propounding and defending the paper writing purporting to be the will of decedent. Act of February 27, 1801 (2 Stat. at L. 103, 107); Act of June 21, 1870 (16 Stat. at L. 160, 161); *McIntire's Estate,* 5 Mackey, 299; *Groff* v. *Miller,* 20 App. D. C. 459; *Iglehart* v. *Iglehart,* 204 U. S. 476, 484, 485; Maryland Act of 1798, chap. 101; D. C. Code, secs. 61, 62, 66, 68, 114, 116, 129, 143; *United States* v. *Sampson,* 19 App. D. C. 435;

(3) Appellants are entitled to a reasonable allowance out of the assets of the estate of decedent for expenses and counsel fees incurred in connection with propounding the will and in defending it when attacked. *Hamilton* v. *Shillington,* supra; *Tuohy* v. *Hanlon,* supra.

*Mr. J. J. Darlington, Mr. Myer Cohen, Mr. Frank J. Hogan,* and *Mr. Wm. G. Johnson,* for the appellee, in their brief cited:

*Allen* v. *Seaward,* 86 Iowa, 718; *Bowden* v. *Higgs,* 9 Lea, 343; *Compton* v. *Barnes,* 4 Gill, 55; *Cornwell* v. *Cornwell,* 11 Humph. 484; *Douglas* v. *Yost,* 18 N. Y. Supp. 830; *Olmstead's Estate,* 120 Cal. 447; *Soulard's Estate,* 141 Mo. 642; *Fillinger* v. *Conley,* 163 Ind. 584; *Glass* v. *Ramsay,* 9 Gill, 456; *Gorton* v. *Perkins,* 63 Md. 589; *Hamilton* v. *Shillington,* 19 App. D. C. 268; *Harrison* v. *Clark,* 95 Md. 308; *Hazard* v. *Engs,* 14 R. I. 5; *Henderson* v. *Simmons,* 33 Ala. 291; *Re Downie,* 42 Wis. 66; *Re Carman,* 48 N. W. 985; *Re Jackman,* 26 Wis. 364; *Johns* v. *Hodges,* 60 Md. 215; *Kengla* v.

*Randall,* 22 App. D. C. 463; *Lassiter* v. *Travis,* 98 Tenn. 330; *McIntire* v. *McIntire,* 14 App. D. C. 337; *Meeker* v. *Meeker,* 74 Iowa, 353; *Miller* v. *Gehr,* 91 Md. 709; *Perkins* v. *Perkins,* 116 Iowa, 352; *Phillips* v. *Phillips,* 81 Ky. 328; *Pingree* v. *Jones,* 80 Ill. 177; *Shaw* v. *Camp,* 56 Ill. App. 23; *Sinnott* v. *Kenaday,* 14 App. D. C. 1; *Townshend* v. *Brooke,* 9 Gill, 20; *Tuohy* v. *Hanlon,* 18 App. D. C. 225; *Wills* v. *Spraggins,* 3 Gratt. 555.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

We come to the single question in this case, whether legal authority does exist for reimbursement from the corpus of the estate of executors named in a will, for counsel fees and costs incurred in defending the validity of the will in an action which results in an adverse verdict and judgment. It will be observed at the outset that the alignment of appellants as cave-atees and defendants was in compliance with an order of the court, and not as a result of their voluntary intrusion into the case. This obligation imposed upon appellants by the court is, however, in our opinion, no greater than that imposed by the testator under the terms of the will. A testator is vested with legal dominion over his estate to dispose of it under the forms of law as he may deem advisable. He is vested with power to name executors, who are his trustees to see that his wishes are carried out; and it is their duty to defend his wishes until the document giving them authority to act has been legally annulled. It is a trust which, when accepted by propounding the will for probate, attaches, and it is doubtful if it could then be avoided except by permission of the court. *Tuohy* v. *Hanlon,* 18 App. D. C. 225, 232. So long as the agency exists, it would seem, therefore, that legal provision to meet the expense from the estate, of defending the wishes of the testator, is not only sound in policy, but is sanctioned by every principle of right and justice.

While we think the duty of the executors to defend the will against a caveat, whether filed before or after formal pro-

bate, is the same, it must be remembered that the court required proof of the due execution of the will before the issues for the trial were framed. While the appellants are, for the purposes of this case, in the position of the executors of a duly probated will, except that their status fixed by the will has not been confirmed by the issuance of letters testamentary, the distinction sought to be made by counsel for appellee between the duty of executors before and after probate is totally without merit. An executor derives his appointment from the testator, which appointment is approved and letters testamentary are issued as an incident of the probate proceedings. Hence, the contention that he is not an executor until after probate is a fictitious assumption. He is an executor for the duties to be performed before probate to exactly the same extent that he is an executor for the duties to be performed after probate. The same grounds would have existed for assailing the validity of the present will after probate as before. The court found that it had been executed with all the formalities required by law to admit it to probate. Yet, had it been probated, it would still have contained the fatal defect which ultimately determined its invalidity; but, until that defect was discovered and adjudicated, the relation between the executors and the testator remained at all times the same. In *Fillinger* v. *Conley,* 163 Ind. 584, 72 N. E. 597, the relation of an executor to the estate before probate is defined as follows: "An administrator derives his whole authority from his letters, but it is laid down by the older writers that as an executor derives his title from the will he is capable of performing many acts which are incident to the office before the will is established by probate."

But this just and reasonable interpretation has been applied in this jurisdiction. In the *Tuohy Case,* this court, considering the authority of an executor before probate of the will, said: "We cannot subscribe to the theory that in this District, whatever the doctrine may be elsewhere, an executor derives his authority from the probate court, and not from the will of the deceased person. On the contrary, we have distinctly held, in accordance with precedent, and with that which we

may regard as the common law of England on the subject, that an executor, differing radically in this regard from an administrator, derives his authority from the will, and not from the court wherein he becomes qualified to act. *Sinnott* v. *Kenaday,* 14 App. D. C. 1; 2 Bl. Com. 507. And that ruling has been affirmed by the Supreme Court of the United States on appeal. *Kenaday* v. *Sinnott,* 179 U. S. 615, 45 L. ed. 344, 21 Sup. Ct. Rep. 233. So, it must be regarded as settled law with us that an executor, although held as a trustee for all the purposes of the law and required to administer that trust under the direction and authority of the tribunal specifically provided for the purpose, derives his interest in the estate of the deceased entirely from the will, and becomes vested with that interest from the moment of the testator's death. He may do many things which an administrator is not entitled to do; as, for example, to bury the deceased in a manner suitable to the estate which has been left. In fact, the great commentator on English law, at the place above cited (2 Bl. Com. 507), says that he can do most of the things before the probate of the will which he may do afterwards. Indeed, in the present case it appears that he had actually reduced the personal estate of the deceased into his own possession; for in the record it is stated that, after the overthrow of the will and the appointment of the appellant as administrator, he delivered to this latter 'the entire personal estate of the deceased then in his hands, without diminution.' He seems, therefore, to have already entered upon the performance of the duties of an executor."

Turning from the duty imposed upon an executor by the testator, which attaches from the date of propounding the will for probate, and is indicative of his acceptance of the trust, we come to the power of the court to award the executors costs incurred in defending the will. Prior to the adoption of the Code, the provision of our law relating to the allowance of costs in probate matters descended to us from the Maryland Act of 1798, which this court declared, in the *Tuohy Case* (decided prior to the passage of the Code) "is the basis of all our testamentary law, and which is substantially in force to this day in

the District of Columbia. Subchapter 15, sec. 17, of that act
provides that, upon the trial and determination of any issues,
'the orphans' court may award costs to the party in their opin-
ion entitled thereto;' and subchap. 10, sec. 2, provides that an
executor or administrator may in his account have an 'allow-
ance for costs and for extraordinary expenses, not personal,
which the court may think proper to allow, laid out in the re-
covery or security of any part of the estate.' "

This act being in force at the date of the adoption of the
Code, was it repealed by the provisions of the Code? While
Congress, by the Code, to some extent recast the testamentary
law of the District, it nevertheless remains substantially as it
came to us from Maryland. The section of the Maryland Act
of 1798 was not incorporated into the Code, and sec. 1636
of the Code provides, among other things, that "all acts and
parts of acts of the general assembly of the State of Maryland
general and permanent in their nature, all like acts and parts
of acts of the legislative assembly of the District of Columbia,
and all like acts and parts of acts of Congress applying solely
to the District of Columbia in force in said District on the
day of the passage of this act, are hereby repealed" [31 Stat.
at L. 1434, chap. 854], with certain exceptions which are not
important here.

While this repealing clause is in sweeping terms, it would
not be held to include Maryland acts retained in the Code by
reasonable implication. Turning to sec. 116 of the Code, de-
fining the jurisdiction of the probate court, it provides as fol-
lows: "The special term of said supreme court, heretofore
known as the orphans' court, shall be designated the probate
court, and the justice holding said court shall have and exer-
cise all the powers and jurisdiction by law held and exercised
by the orphans' court of Washington county, District of Co-
lumbia, prior to the 21st day of June, anno Domini 1870."
[31 Stat. at L. 1208, chap. 854.] On June 21, 1870, the
orphans' court of Washington county was administering the
testamentary law of the Maryland Act of 1798, and especially
subchap. 15, sec. 17, relating to the allowance of costs and

expenses. This was essentially a jurisdictional provision, in that it conferred power in the orphans' court to "award costs to the party in their opinion entitled thereto." But it is urged that it was repealed by implication by sec. 143 of the Code, which provides that "the said court shall have authority to render judgment for costs against the unsuccessful party in any trial conducted in said court and to issue execution therefor." [31 Stat. at L. 1214, chap. 854.]

It will be observed that this merely provides for the imposition and enforcement of costs against the unsuccessful party, and it well may be that it excludes the imposition of costs against the successful party in favor of an unsuccessful party. But that does not meet this case. The award of costs here is not sought against Lee Hutchins, the plaintiff, but against the estate; and the interest of Lee Hutchins in the estate is only the share he may be entitled to after the payment of all the expenses of administration, of which the costs here sought, we think, are a proper part.

There is nothing in sec. 143 that conflicts with the discretionary jurisdiction reserved to the court by sec. 116. Nor do the provisions of sec. 143 limit the power of the court to enforce a decree for the payment of costs in favor of the unsuccessful party. This power is reserved in sec. 114 of the Code, which provides: "All interlocutory orders may be enforced by such process as might be had upon a final judgment or decree to the like effect, and the payment of costs adjudged to any party may be enforced in like manner."

While probate proceedings are actions at law, the broad discretionary power vested in the court in the general administration of the property of the estate is closely akin to the power vested in a court of equity in disposing of assets in its hands for distribution. This principle is recognized in the *Tuohy Case,* where the court said: "In any event, it is undoubtedly the law that the special term of the supreme court of the District exercising the functions of an orphans' court is entitled, within the scope of those functions, to proceed in accordance with equitable principles and procedure. *Kenaday* v. *Sinnott,*

179 U. S. 606, 615, 45 L. ed. 339, 344, 21 Sup. Ct. Rep. 233. Especially in the matter of the awarding of costs is there equitable jurisdiction conferred on the orphans' court, and on the supreme court of the District of Columbia exercising the functions of an orphans' court, by the express terms of the sections of the statute which have been cited."

It also must be remembered that the grant of discretion implies the existence of a right which cannot be arbitrarily denied. The discretion can only be exercised by way of denial, because of the fraud or equivalent misconduct of the executors. No such a situation has been disclosed here. If it does exist, it remains to be discovered in a hearing such as is prayed for in the petition, and which should have been granted and which is necessary, if for no other reason than to enable the court to intelligently exercise its discretion in determining whether or not the fees claimed are reasonable. The mere fact that Lee Hutchins, the caveator, and Walter Hutchins, a caveatee and executor, are heirs and in any event beneficiaries in the estate, is foreign to this case. An heir, as executor, stands in no different light than an executor who has no interest in the estate as a beneficiary. As we have suggested, the real interest of an heir in an estate is measured by and is only ascertainable from the corpus of the estate after the administration expenses have all been paid.

It is well within the power of the court, in carrying out the wishes of the testator that his will be sustained, to lessen the share that would otherwise go to his next of kin in meeting the reasonable expenses of the testator's trustee, the named executor, in defending the validity of the will. As was said by Mr. Justice Barnard, where this question was under consideration in *Re Pritchard,* 30 Wash. L. Rep. 9: "In my opinion such an allowance as is asked in this case should not be granted or refused from feelings of sympathy or prejudice, but that it should be the policy of the law to grant a reasonable allowance in such case as a matter of right. A last will and testament is a solemn instrument; and the testator, who legally has the dominion over his estate, and the power to appoint an executor

to carry out the dispositions he desires to make of it, should be allowed to close his eyes in death with the assurance at least that a reasonable effort will be sanctioned by the law to sustain his will, at the expense of his own estate. If the share that would otherwise have gone to his next of kin shall be lessened thereby, it is presumably caused by the testator himself, who had the right, prima facie, to appropriate his property as he might see fit; and the formal execution of his will should ordinarily authorize his executor to use a reasonable part of his estate to establish and carry out that will."

The decrees are reversed, with costs to be taxed against the estate of Stilson Hutchins, deceased, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*