**WATKINS v. RIVES, Superintendent of Washington Asylum and Jail.**

**No. 7826.**

United States Court of Appeals for the District of Columbia.

Decided Dec. 22, 1941.

Mr. William J. Howder, of Washington, D. C., with whom Mr. George L. Quinn, Jr., of Washington, D. C., appeared on the brief, for appellant.

Mr. Dennis McCarthy, Asst. U. S. Atty., of Washington, D. C., with whom Messrs. Edward M. Curran, U. S. Atty., and John H. Mitchell and Charles B. Murray, Asst. U. S. Attys., all of Washington, D. C., appeared on the brief, for appellee.

Mr. Ernest F. Henry, of Washington, D. C., appeared on the brief for appellee, and was allowed to participate in oral argument as amicus curiae.

Before MILLER, VINSON and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

The ultimate question presented by this appeal is whether the District Court properly dismissed appellant's petition for a writ of habeas corpus. The answer to the question depends upon the jurisdiction of the Probate Court of the District of Columbia; specifically, whether that court had power to require appellant to deliver to the collectors of an estate, property which, it is claimed, constitutes assets of that estate, and, upon his refusal, to commit him for contempt.

 As has been stated frequently, the probate court is one of limited powers and jurisdiction.[1] Generally speaking, it exercises the same powers as were conferred upon the Orphans' Court of Maryland by the Act of 1798, together with such additional powers as have been conferred by Congress since that time.[2] Although Maryland statutes and Maryland decisions of later date than 1801 do not constitute the law of the District of Columbia, nevertheless, this court has, customarily, looked to later decisions of the Court of Appeals of Maryland for assistance, not merely in interpreting the law which was inherited from that State, but also in interpreting later statutes of the District which are the same or closely similar to those of Maryland.[3]

 Thus, in construing Section 253 of Title 29 of the District of Columbia Code (1929),[4] we followed the courts of Maryland[5] in their interpretation of a substantially identical section,[6] and concluded that

[1] Hawley v. Hawley, 72 App.D.C. 357, 358, 114 F.2d 505, 506; Richardson v. Daggett, 24 App.D.C. 440, 444.

[2] Miniggio v. Hutchins, 43 App.D.C. 117, 119.

[3] Hawley v. Hawley, 72 App.D.C. 376, 380, 114 F.2d 745, 749; Clawans v. Sheetz, 67 App.D.C. 366, 369, 92 F.2d 517, 520. See Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 154, 156, 85 F.2d 411, 413.

[4] "If an executor, administrator, or collector shall believe that any person conceals any part of his decedent's estate, he may file a petition in said court alleging such concealment, and the court may compel an answer thereto on oath; and if satisfied, upon an examination of the whole case, that the party charged has concealed any part of the estate of the deceased, the court may order the delivery thereof to the executor, administrator, or collector, and may enforce obedience to such order in the same man-ner in which orders of said court may be enforced." Act of March 3, 1901, 31 Stat. 1209, § 122.

[5] Daugherty v. Daugherty, 82 Md. 229, 231, 33 A. 541, 542; Waring v. Edmonds, 11 Md. 424, 433; Gibson v. Cook, 62 Md. 256, 259. See Scott v. Burch's Adm'x, 6 Harris & J., Md., 67.

[6] Md. Code Ann. (1939) art. 93, § 252: "If an administrator shall believe that any person conceals any part of his decedent's estate he may file a petition in the orphans' court of the county in which he obtained administration, alleging such concealment, and the court shall compel an answer thereto on oath; and if satisfied upon an examination of the whole case that the party charged has concealed any part of the personal estate of the deceased, may order the delivery thereof to the administrator, and may enforce obedience to such order by attachment, imprisonment or sequestration of property."

the probate court lacked power, under that section, to try title to property or right of possession thereof, against a stranger to the estate who claims title adversely to it.[7] Similarly, we have followed the guidance of Maryland[8] in holding that the probate court is without jurisdiction to compel an executor or administrator to pay a claim asserted against a decedent's estate.[9] Relying, again, upon the analogy between the probate court and the orphans' court, we held that the probate court could not decide a dispute, regarding the title or right of possession of property, between the guardian of a minor and a third person who, it was alleged, held the proceeds of a fund of $800, to which the minor was entitled; but who denied the right of the minor or of the guardian to possession of the fund.[10] Upon the same theory, we held that the probate court lacked jurisdiction to compel the executors of an estate to deliver securities, held by them in that capacity, to the widow of deceased who had renounced her interest under the will and elected to take as his widow under the statutes. We said that even though she would be a distributee, nevertheless, for the purpose of the action which she had brought against the executors, she was in the position of a stranger, a third party, claiming ownership against the estate.[11] The courts of Maryland and of the District of Columbia have held uniformly and consistently, therefore, that the orphans' court and probate court lack jurisdiction and are without power to decide disputes concerning title or possession, as between representatives of an estate and strangers who claim adversely to the estate.

The District Court held, however, and appellee contends, that the situation of the present case is one concerning which this court has not yet spoken; that the dispute in the Probate Court was between two parties, neither of whom was a stranger claiming adversely to the estate; and that the applicable section of the Code gives to that court full jurisdiction and ample power to act as it did. The section referred to is set out in the margin.[12]

Again we find that Maryland has a substantially identical Code section,[13] concerning the adverse holding of assets belonging to the estate, by one who, being a representative of the estate, occupies the position of a fiduciary rather than a stranger. And the Maryland courts have held, repeatedly, that,

---

[7] Richardson v. Daggett, 24 App.D.C. 440, 445. See Cook v. Speare, 13 App. D.C. 446, 454.

[8] Townshend v. Brooke, 9 Gill, Md., 90, 91.

[9] Miniggio v. Hutchins, 43 App.D.C. 117, 119.

[10] Jones v. Dunlap, 73 App.D.C. 59, 115 F.2d 689.

[11] Holzbeierlein v. Grant, 73 App.D.C. 154, 117 F.2d 26.

[12] D.C.Code (1929) tit. 29, § 254: "If any person interested in any decedent's estate shall by petition allege that the executor, administrator, or collector has concealed or has in his hands and has omitted to return in the inventory or list of debts any part of his decedent's assets, and the court shall finally adjudge and decree in favor of the allegations of the petition, in whole or in part, it shall order an additional inventory or list of debts, as the case may be, to be returned by the executor, administrator, or collector, and appraisement to be made accordingly, to comprehend the assets omitted, and the court may compel obedience to said order, and, if the same is not complied with, revoke the letters testamentary or of administration or of collection and order the bond of the executor, administrator, or collector to be put in suit."

[13] Md.Code Ann. (1939) art. 93, § 253: "The provisions of the aforegoing section are extended to all cases where any person interested in any decedent's estate shall by bill or petition allege that the administrator has concealed, or has in his hands and has omitted to return in the inventory or lists of debts any part of his decedent's assets; and if the court shall finally adjudge and decree in favor of the allegations of such petition or bill, in whole or in part, they shall order an additional inventory, or list of debts, as the case may be, to be returned by the administrator, and appraisement to be made accordingly, to comprehend the assets omitted; and such additional inventory or list of debts shall have the same effect to all intents and purposes as any inventory or list of debts before returned; and the court may compel obedience to the said order by attachment and imprisonment and sequestration of property; and if the said administrator shall, either before or after such process of attachment, imprisonment and sequestration, fail to comply with such order, his letters of administration may be revoked, and the court may direct his bond to be put in suit; and the assets ordered to be comprised in such additional inventory or list of debts shall be decreed and taken to be within the condition of said bond."

in cases arising under this section of its Code, the orphans' court has power to try the question of title and right of possession. [14] In the leading case of Linthicum v. Polk, [15] the Court of Appeals of Maryland pointed out that there is a manifest distinction between that Code section which provides for inquiry concerning concealment of assets by a stranger [16] and the other section which permits the orphans' court to determine that the representative of the estate has either concealed or omitted to return assets; to order an additional inventory to be filed; and to compel obedience to its order. [17] In the former situation, if the stranger denies concealment and claims title, there is no basis upon which the orphans' court can get jurisdiction of him or proceed against him. [18] In the latter situation, on the contrary, both parties are in court and the court has jurisdiction of both. As is pointed out in the Linthicum case: [19] "He [the administrator] being already there and the person interested in the decedent's estate voluntarily coming into it, there is not the same reason for denying the orphans' court jurisdiction to determine questions between them as there is when the administrator undertakes to bring into that court one who is not already there." Another consideration which strongly impressed the court in that case is thus stated: "* * * if the administrator does not file correct inventories or lists of debts, can there be any reason why the orphans' court should not have authority to compel him to do so? Is that court to be shorn of all power to compel administrators to file true and correct inventories and lists of debts on the mere allegation of the administrator that the property belonged to him? If the orphans' court cannot determine the question, what tribunal can? The title to property of the decedent is in the administrator. No one could maintain an action of replevin, trover, or other action to test the title against him for the estate, for the simple reason that the title is in him as administrator, if the property belongs to the estate. If he has money belonging to the estate, who could sue to recover it in a court of law? Manifestly, no one could, for the reason that no one but the administrator is entitled to recover the money due his decedent. Nor would there be any ground for a court of equity to give relief. It was held as far back as Beall v. Hilliary, 1 Md. 186 [54 Am.Dec. 649], that one executor could not file a bill in equity against his co-executor in order to compel the latter to account for and pay over to him certain claims alleged to be due from the defendant to the estate of their testator; and in Whiting v. Whiting, 64 Md. 157, 20 A. 1030, that case was affirmed, and it was said: 'The Code, by sections 225, 239, and 241 of article 93, makes provision for proceeding against delinquent administrators or co-administrators in the orphans' court, and a resort to the remedy thus provided would certainly be more expeditious and less expensive than by proceeding in equity.' It is true that the jurisdiction of the orphans' court is limited, but among the powers expressly conferred on it are those to 'direct the conduct and settling the accounts of executors and administrators, superintend the distribution of the estates of intestates, secure the rights of orphans and legatees, and to administer justice in all matters relative to the affairs of deceased persons.' Section 230, art. 93. It would indeed be scant justice if distributees, with a petition of this character, are to be turned out of court on the mere allegation of an administrator that the property referred to belonged to him, and not to the estate he represents. The law does not prohibit those interested in estates from going into the courts where they are to be settled to demand proper accounting by administrators and executors." The Maryland rule finds

---

[14] Linthicum v. Polk, 93 Md. 84, 48 A. 842; Bowers v. Cook, 132 Md. 432, 438, 104 A. 420, 422; Anderson v. Curran, 155 Md. 538, 542–544, 142 A. 719, 721, 722. See Talbot Packing Corp. v. Wheatley, 172 Md. 365, 370, 190 A. 833, 835.

[15] 93 Md. 84, 48 A. 842.

[16] Md.Code Ann. (1939) art. 93, § 252.

[17] Md.Code Ann. (1939) art. 93, § 253.

[18] Linthicum v. Polk, 93 Md. 84, 92, 48 A. 842, 843: "The jurisdiction of the Court to proceed under that section is founded exclusively on the allegation of concealment, and hence it has been held by this court that without such allegation the orphans' court has no jurisdiction, (Taylor v. Bruscup, 27 Md. 219); and when the pleadings admit possession by the defendant, but set up title in him, the orphans' court has no jurisdiction, as there is no question of concealment to be passed on, but one of title, which belongs to another tribunal."

[19] Linthicum v. Polk, 93 Md. 84, 93, 48 A. 842, 844.

support in well-reasoned cases from a majority of the other jurisdictions,[20] which also draw the line, limiting the power of probate courts to try questions of title, between cases in which the representative claims adversely to the estate and cases in which the issue arises against a stranger to the estate.

We conclude, therefore, that in a proceeding authorized by Section 254, Title 29 of the District of Columbia Code (1929), where an executor asserts title to assets, adversely to the estate, the probate court has jurisdiction to try the questions of title there presented.[21] Language contained in Jones v. Dunlap[22] and Holzbeierlein v. Grant,[23] which may suggest the contrary, has no application to such a proceeding; because, as already pointed out, each of those cases was concerned with an issue of title between the estate and a stranger to the estate.

A review of the facts in the present case demonstrates that appellant was not a stranger to the estate. On October 1, 1935, he filed a petition in the Probate Court, praying for admission to probate of a will executed by decedent in which appellant was named executor, and praying for issuance of letters testamentary to himself. He recited in his petition that decedent died possessed of certain personal property; that debts, funeral expenses and current bills would amount to approximately $1500; and that under the provisions of the will, he was entitled to the residuum of the estate. A caveat was filed, issues were framed and upon trial the jury found that decedent had lacked mental capacity to execute the will and that its execution had been procured by undue influence. During this litigation collectors of the estate were appointed. On March 25, 1937, following the trial mentioned above, and after denial of a motion for new trial, the court entered its decree denying probate and dismissing appellant's petition. An appeal was noted from this decree. On May 20, 1937, Jerome F. Barnard, one of the collectors of the estate, filed a petition for a rule to show cause, in which he recited the facts above set out, and alleged further that appellant had failed and refused to turn over certain assets of the estate, and had concealed them. His petition further recited as follows: "Petitioner respectfully submits that it is for the best interests of the estate, and it is necessary and proper in order to administer upon and close the estate that the said Henry J. Watkins, Jr., as the executor nominated under the aforesaid paper writing and executor *de son tort* be required to transfer and deliver to the Collectors all of the aforesaid assets of the estate of the said Ernst G. Fischer not yet delivered to the estate and fully to account for and report to this Honorable Court all funds so collected by him and disbursements as may be claimed by him to have been made for the account of the decedent and his estate." On May 21, 1937, the court issued a rule to show cause. On June 23, 1937, appellant answered the petition and rule to show cause. He admitted most of the allegations of the petition but denied that he had concealed any assets of the estate. To the contrary—and, it will be noted, contrary to the position which he had himself originally taken—he alleged that: "* * * all of the property he received from the aforesaid Ernst G. Fischer, deceased, was a gift to him by the decedent during his lifetime, all of which he claims as a gift, and forming no part of the estate herein, and therefore should not be required to transfer and deliver to the collectors that property which he claims as a gift, or be required to account to this Court for the same." On July 3, 1937, appellant filed an amended answer to the petition and rule to show cause and on July 15th, filed a further amended answer. In each of these he repeated his earlier admissions as well as his denial of concealment and repeated his allegation that he received the property of the decedent as a gift. Following a trial by jury in which the issues were determined adversely to appellant, the court, on October 29, 1937, entered its decree, in which it found that appellant: * * * *exercised the powers and performed duties of an executor,* instituted these proceedings by his petition seeking confirmation of his acceptance of his appointment as executor as aforesaid, and that the said Henry J. Wat-

---

[20] See, for example, In re Vucinich's Estate, 3 Cal.2d 235, 243–245, 44 P.2d 567, 570, 571; Security-First Nat. Bank v. King, 46 Wyo. 59, 72–77, 23 P.2d 851, 854, 855, 90 A.L.R. 125; and see, for collection of authorities, Annotation, 90 A.L.R. 134.

[21] Cf. Mercer v. Hogan, 15 D.C. 520, 4 Mackey 520, 523, 524.

[22] 73 App.D.C. 59, 115 F.2d 689.

[23] 73 App.D.C. 154, 117 F.2d 26.

kins, Jr., has in his possession certain of said decedent's personal property, being (1) $11,806.23, the net proceeds of 232 shares Amer. Tob. 'B' stock, (2) 15 $1,000 Manchester Terminal Bonds, 7% 2nd Lien, (3) 30 $1,000 Associated Gas & Elec. Bonds, 4%, 1978, (4) 40 shares General Electric stock, (5) Cash received in the sum of $707.14;" and it thereupon: "* * * adjudged, ordered, and decreed that the said Henry J. Watkins, Jr., be, and he hereby is, directed to transfer and deliver forthwith to the Collectors of the estate of said decedent, all of the aforesaid assets of the said estate, and upon his failure so to do within five days from the signing hereof, the full value of all of said assets or such part thereof as may be eloigned by the said Henry J. Watkins, Jr., shall be fixed and determined, and thereupon judgment entered against the said Henry J. Watkins, Jr., with execution as at law." Appellant noted an appeal from this decree. On September 1, 1938, an earlier will of decedent was admitted to probate and one Bouis qualified as executor. On June 28, 1939, Bouis filed a petition for a rule to show cause, in which he alleged that appellant had failed and refused to comply with the decree of October 29, 1937. On June 28, 1939, the court issued its rule ordering appellant to show cause why he should not be adjudged in contempt. Appellant failed to appear or to show cause, and on January 5, 1940, the court issued its decree for civil contempt against appellant, and committed him to jail until he should have complied with its earlier decree. It is this commitment which appellant challenged by his petition for a writ of habeas corpus.

The probate court has power "to hear, examine, and decree upon all accounts, claims and demands existing between executors and administrators and legatees * * * to enforce the rendition of inventories and accounts by executors, * * * to enforce the distribution of estates by executors * * *." [24] Appellant's status as an executor was fixed by the will, which he offered for probate, and he derived his ap-

pointment therefrom. [25] That will was the act of the testator and until the defect in it was discovered and adjudicated, the relation between the executor and the testator remained the same. [26] Under that will and without the necessity for ratification of his appointment by letters testamentary, he was authorized to perform certain acts in relation to the estate. [27] Instead of renouncing the appointment, as it was his privilege to do, [28] he, acted upon his testamentary authority, by paying debts, collecting assets, and offering the will for probate. On these facts appellant cannot be heard to say he was not subject to the Probate Court's power to· compel an accounting. To the contrary, he voluntarily submitted himself to the jurisdiction of the court and invited its exercise of power over himself in all ways proper to the court's control of an executor. [29]

■ Appellant urges, however, that, though at first he may have acted as an executor, he became a stranger to the estate from the moment the will was declared invalid. His own conduct, however, belies that contention. [30] He noted an appeal from the decree of March 25, 1937, dismissing his petition; he filed an answer and two amended answers to the petition and rule to show cause; he noted an appeal from the decree of October 29, 1937, in which the court found (1) that he had exercised the powers and duties of an executor; (2) that he had *"instituted these proceedings* by his petition seeking confirmation of his acceptance of his appointment as executor * * *;"* [Italics supplied] (3) that he then had in his possession certain of decedent's property; and in which decree the court had ordered him to deliver that property to the collectors. In other words, appellant did not question the jurisdiction of the court over him, or attempt to play the role of a stranger to the estate until after (1) the earlier will had been admitted to probate, (2) letters testamentary had been issued to George Ezekiel Bouis, and (3) a rule had been sought by Bouis to require appellant to show cause why he should not

[24] D.C.Code (1929) tit. 18, § 124.

[25] Tuohy v. Hanlon, 18 App.D.C. 225, 231.

[26] Hutchins v. Hutchins, 48 App.D.C. 286, 291.

[27] Ibid. The Code recognizes this limited authority by withholding from the executor the power to act without letters, concerning the property of the estate "further than is necessary to collect and preserve [the estate] * * *." D. C.Code (1929) tit. 29, § 140. See also, case cited in note 25, supra.

[28] D.C.Code (1929) tit. 29, § 138.

[29] Crothers v. Crothers, 121 Md. 114, 118, 88 A. 114, 116.

[30] Damouth v. Klock, 29 Mich. 289, 296.

be adjudged in contempt for failure to comply with the decree of October 29, 1937, from which decree appellant had noted an appeal. All of this constituted clear recognition of the fact, by appellant, that he was not a stranger; that he had voluntarily submitted himself to the jurisdiction of the court in a representative capacity; that he had attempted to maintain that capacity long afer the will, under which he claimed to act, had been declared invalid. And it constituted a waiver of the objection which he now offers to the jurisdiction of the court. [31]

The Court of Appeals of Maryland, construing and applying the section of its Code [32] which corresponds with Section 254, Title 29 of the District of Columbia Code (1929), [33] has held that its Orphans' Court has jurisdiction over a deposed administrator, on the theory that he is in court within the meaning of Linthicum v. Polk, supra, to require an accounting and delivery of decedent's property, as against his claim of ownership thereof; just as it does in the case of an administrator who is still in office. [34] There is no reason for a different rule in the District of Columbia. [35]

Appellant challenges the sufficiency of service of the rule and order to show cause. However, service conformed to Rule 5(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, [36] and no more was required. Although Rule 81 (a) (1) of the Federal Rules of Civil Procedure excludes probate, adoption and lunacy proceedings in the District Court of the United States for the District of Columbia, from the operation of *all* Federal Rules of Civil Procedure, nevertheless, that court, in the exercise of its own rule-making power, [37] expressly provided [38] that: "In the determination of contested issues of law or fact, or of law and fact, *in probate* * * * these Rules and the Federal Rules of Civil Procedure, as now or hereafter in force, shall also govern the procedure on motions, depositions, discovery and testimony, and at the hearing or trial of such issues." [Italics supplied] And in Rule 13 of the Probate Court it provided specifically that "all pleadings and other papers shall be served and filed in like manner as provided in Rule 5 of the Federal Rules of Civil Procedure." The return shows that service was made upon appellant's wife "adult on the premises," and this fact is admitted by appellant.

Appellant contends, however, that personal service and not mere notice was required. This would be true if the contempt proceeding had been an original proceeding, and perhaps if it had been for criminal contempt. [39] But the proceeding here was for civil contempt; it was part of the main cause and a continuation thereof. [40] In that cause, the Probate Court had personal jurisdiction over appellant, who had appeared and answered the petition. The jurisdiction of the Probate Court continued in that cause for the purpose of making its decree effective, and in the proceeding for civil contempt for the purpose of enforcing the original order. [41] Conse-

---

[31] Crothers v. Crothers, 121 Md. 114, 118, 88 A. 114, 116.

[32] Act of 1831, c. 315, § 13, Md.Code Ann. (1939) art. 93, § 253.

[33] Act of March 3, 1901, 31 Stat. 1210.

[34] Anderson v. Curran, 155 Md. 538, 546, 142 A. 719, 722. See also, Wilson v. McCarty, 55 Md. 277, 280, 281.

[35] Cf. Hudson v. Barratt, 62 Kan. 137, 143, 61 P. 737, 739; Waterland v. Superior Court, 15 Cal.2d 34, 39, 98 P.2d 211, 213; Dobler v. Strobel, 9 N.D. 104, 107, 81 N.W. 37, 39, 81 Am.St.Rep. 530.

[36] That rule reads: "Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney *unless service upon the party himself is ordered by the court:* Service upon the attorney or upon a party shall be made by delivering a copy to him or * * *. Delivery of a copy within this rule means: * * * *leaving it at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.* * * * " [Italics supplied]

[37] D.C.Code (1929) tit. 18, § 51.

[38] Rules of Civil Procedure of the District Court of the United States for the District of Columbia (1938) Rule 1, § 2.

[39] Billingsley v. Better Business Bureau, 232 App.Div. 227, 228, 249 N.Y.S. 584, 585.

[40] Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 452, 52 S.Ct. 238, 76 L.Ed. 389; National Labor Relations Board v. Hopwood Retinning Co., 2 Cir., 104 F.2d 302, 305.

[41] See Warring v. Colpoys, 74 App. D.C. 303, 122 F.2d 642, 646; Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L. Ed. 329.

quently, appropriate notice to the appellant was the sole requirement. [42]

Appellant urges that the turn-over order, in assuming he had possession of the assets, was inconsistent with the jury verdict that he had disposed of them other than to the use of decedent. However, his continued possession of the assets or the proceeds thereof is entirely consistent with his disposal of them other than to the use of decedent. In any event, such inconsistency between the turn-over order and the verdict of the jury as may appear from this equivocal contention, is not a proper subject for review on habeas corpus. The same may be said of the alleged inconsistency between the contempt decree and the turn-over order, based on the allegedly alternative nature of the latter and the theory that a remedy at law was elected by entering judgment, with execution as at law, on the verdict evaluating the eloigned assets. While a petition for writ of habeas corpus may properly be used to challenge jurisdiction of a court, [43] it cannot be used to review inconsistencies or even errors of law committed by a court of competent jurisdiction. These are proper matters for review on appeal; but not on appeal from an order dismissing a petition for a writ of habeas corpus. [44]

Appellant also alleges inconsistency between the contempt proceeding and the turn-over order in that the latter, by its terms, directed him to turn the concealed assets over to the collector, whereas he is held in contempt on petition of the executor for failing to deliver the assets to the latter, who had been appointed subsequent to the entry of the turn-over order. This alleged variance between the contempt decree and the original mandate is also a matter not subject to review on habeas corpus [45] and it is, in addition, a contention without merit, as upon the grant of letters to an executor the latter "may be permitted to prosecute any suit commenced by said collector as if the same had been begun by said executor * * *." [46]

The effect of the commitment for contempt is not, as appellant contends, imprisonment for debt, but is, instead, imprisonment for failure to comply with the court's order to turn over assets, or the proceeds thereof, in specie. [47] An executor is a fiduciary and in that respect a trustee. [48] The power of equity to order a trustee to turn over specific assets and to commit for contempt upon failure to do so is well established. [49] The probate court is empowered to enforce its decrees with those powers which may be exercised by the court of equity. [50] It properly exercised that power over appellant for his refusal to comply with the terms of its order.

Affirmed.

---

[42] Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 455, 52 S.Ct. 238, 76 L.Ed. 389; Brooks v. United States, 9 Cir., 119 F.2d 636, 644.

[43] Bostic v. Rives, 71 App.D.C. 2, 3, 107 F.2d 649, 650, certiorari denied, 309 U.S. 664, 60 S.Ct. 593, 84 L.Ed. 1011.

[44] Warring v. Colpoys, 74 App.D.C. 303, 122 F.2d 642, 644; United States ex rel. Emanuel v. Jaeger, 2 Cir., 117 F.2d 483, 487; Matter of Gregory, 219 U.S. 210, 213, 31 S.Ct. 143, 55 L.Ed. 184; United States ex rel. Birnbaum v. Henkel, C.C.S.D.N.Y., 185 F. 553, 554.

[45] Loubriel v. United States, 2 Cir., 9 F.2d 807, 808; United States ex rel. Paleais v. Moore, 2 Cir., 294 F. 852, 854, 855, certiorari denied, 264 U.S. 581, 44 S.Ct. 331, 68 L.Ed. 860.

[46] D.C.Code (1929) tit. 29, § 154.

[47] Cf. In re Rosser, 8 Cir., 101 F. 562, 566; Jeffries v. Laurie, C.C., E.D. Mo., 27 F. 198; Ryan v. Kingsberry, 88 Ga. 361, 371–382, 14 S.E. 596, 599–602.

[48] Marfield v. McMurdy, 25 App.D.C. 342, 351.

[49] People v. La Mothe, 331 Ill. 351, 356, 163 N.E. 6, 8, 60 A.L.R. 316, 322. See Hovey v. McDonald, 10 D.C. 184, 3 MacArthur 184, 185, affirmed, 109 U.S. 150, 3 S.Ct. 136, 27 L.Ed. 888.

[50] D.C.Code (1929) tit. 18, § 136.