[Sac. No. 4993. In Bank.—February 27, 1937.]

GRACE G. WILSON, Respondent, v. F. M. BAILEY et al., Appellants.

E. S. Mitchell for Appellants.

A. G. Bradford for Respondent.

CURTIS, J.—Plaintiff sought by this action to compel a reconveyance by defendants to her of property, formerly owned by her, under a written option by her grantee to reconvey the property to her upon the performance by her of certain conditions. The facts, which are practically undisputed, are as follows: Plaintiff, prior to August 25, 1932, was the owner of a parcel of land in Eureka, California, upon which was located a service station. Having become involved financially, upon the 25th day of August, 1932, she entered into an agreement with the defendant, F. M. Bailey, whereby she conveyed this real and personal property to him. Defendant, as part of the same transaction, executed an agreement giving her an option to repurchase said real and personal property upon the payment to him of the amount due him at the time of the exercise of the option. By the same agreement as consideration for said conveyance, defendant agreed to assume and pay the deed of trust theretofore executed by the plaintiff in favor of the Bank of Italy, together with all charges in connection therewith, certain assessments upon the property as the instalments became due, the taxes due, and the balance of the purchase price upon certain equipment in use at the service station. The agreement provided that in order to pay off the deed of trust against the premises the grantee should have the right "to mortgage or encumber" said real and personal property, and that any encumbrance or mortgage placed against the property should take priority over said option. In accordance with said agreement, plaintiff executed said conveyance and it was recorded. She also executed a bill of sale for the personal property. During the subsequent year, defendant leased said service station to third parties and credited the rent received therefor toward the reduction of the indebtedness owed to him by the plaintiff. In a letter to the bank, dated August 21, 1933, defendant gave the bank authority to furnish plaintiff with information as to the amount due under the trust deed, and also furnished in said letter a statement of the amount owing him by the plaintiff on that date. Said statement is in the following figures: "Approximate balances. Bank loan—$1700. Cash

Register—$60. Street Assessments—$597.25. Bailey Trading Company — $1006.91. Total — $2766.91." It appears that subsequent to the execution of the written agreement defendant's business had been incorporated under the name of the "Bailey Trading Company". Shortly before the expiration of the option, plaintiff negotiated with the Gilmore Oil Company for the purpose of securing from them an advance by means of which she could pay off defendant and secure a reconveyance of her property. Defendant refused to give a written extension without consulting his attorney. On August 23, 1933, plaintiff and defendant met in front of the bank, and defendant stated to plaintiff that he would not give her an extension in writing, but that he would tell her in front of Mr. Charters, who was vice-president and manager of the bank, that he would extend the agreement for thirty days. It should be here noted that there is no dispute that the agreement was verbally extended. Plaintiff's testimony to this effect was corroborated by the testimony of her son who was also present, and by the testimony of Mr. Charters. Mr. Charters testified that plaintiff and defendant came into his office at the bank; that plaintiff asked Mr. Bailey, "Will you give me thirty days' extension on this proposition?"; that defendant stated that he would; that plaintiff said, "Will you put it in writing?", defendant said, "No, I will not put it in writing, but I will make the statement in Mr. Charters' presence"; plaintiff made some remark, "Be sure to remember that"; and he (Mr. Charters) replied that his memory was none too good and that he would make a note of it. He testified that he did make a pencil memorandum of it on the bottom of the letter, dated August 21, 1933, which defendant had sent to the bank giving the statement of the amount due from the plaintiff, which memorandum was as follows: "August 23/33. In my presence granted a 30 days extension from August 25, 1933, to Mrs. Wilson to redeem the property. H. F. Charters." The defendant, when interrogated on the witness stand under section 2055 of the Code of Civil Procedure, whether his version of the transaction was the same as that of plaintiff and Mr. Charters, replied that it was. He stated: "My recollection of it was that I stated that I would do nothing for another thirty days." To the question, "The idea, Mr. Bailey, was that this proposition should be held open for another thirty

days was it not? defendant replied, "Correct". The brief of appellant contains the following statement: "On August 25th respondent had failed to exercise the option and asked for a thirty day extension, and appellants refused to extend the same in writing, but did state that they would reconvey at any time within thirty days according to the terms of the agreement." In the meantime, the former lessee of the service station had vacated the service station, and on September 11, 1933, there was recorded at the request of the defendant, a lease by defendant to one Lester Lee, a former employee, which was dated, August 25, 1933, but was not acknowledged by Lee until August 31, 1933. This lease was for a period of one year from September 1, 1933, to September 1, 1934, with an option for an extension of two years more. The Gilmore Oil Company upon learning of this lease refused to advance the necessary funds to the plaintiff by reason of the fact that the existence of the lease would prevent their taking over of the service station for the sale of their products. However, on September 25, 1933, the Gilmore Oil Company deposited in the Los Angeles branch of the Bank of America in escrow the sum of $1,006.91, payable to the defendant upon the clearing up by him of the lease to Lester Lee. On the same day, by wire, the Eureka branch of the Bank of America was instructed to pay out the money to defendant upon compliance by him with the terms of the escrow. And on the same afternoon, defendant was informed by telephone by the attorney for the plaintiff that the money was deposited subject to defendant's withdrawal upon compliance with the terms of the escrow. Upon the trial of the action, judgment was in favor of the plaintiff against the defendants. The court found, "It is true that prior to the 25th day of August, 1933, defendant, F. M. Bailey, verbally extended the said option for an additional period of thirty days and that defendant, F. M. Bailey, is estopped to assert the Statute of Frauds." It further found that, "It is true that defendant, F. M. Bailey, executed a promissory note to Bank of America, a corporation, and secured said promissory note by executing a deed of trust covering the lands and premises hereinbefore described. That in so executing said promissory note and deed of trust said defendant was acting as trustee for plaintiff," and "It is true that on August 25, 1933, F. M. Bailey, rendered to plaintiff a statement showing

$1,006.91 due from plaintiff to defendant. That it is true that thereafter and prior to September 25, 1933, plaintiff tendered to defendant, F. M. Bailey, said sum of $1,006.91, being all sums of money due to said F. M. Bailey by virtue of said agreement.'' The court also found that the defendant had verbally extended the option with reference to the personal property and was estopped to plead the statute of frauds with reference to said extension, and that the written lease to Lester Lee ''was entered into fraudulently and without consideration and for the express purpose of creating a cloud upon the title of plaintiff''. The judgment provided: (1) That defendants execute to plaintiff a good and sufficient conveyance of the real property, (2) that defendants execute to plaintiff a good and sufficient conveyance of the personal property involved in said controversy, (3) that plaintiff assume the payment of the promissory note and deed of trust executed by defendant, F. M. Bailey, to the Bank of America, and save defendants harmless therefrom, and (4) that the lease executed to Lester Lee be ''and the same is hereby cancelled''. From said judgment, defendants appeal.

Appellants seek a reversal of said judgment upon the ground that ''an option to purchase realty cannot be extended, except by writing, and must be exercised within the time provided''. Two questions are thus presented: (1) ''Is the defendant estopped from relying upon the statute of frauds with reference to the verbal extension of the option given to the plaintiff to repurchase the real and personal property?'' and ''Was the tender sufficient?'' We are satisfied that the answer to both questions is in the affirmative.

It is, of course, well settled, under the provisions of section 1624 of the Civil Code and section 1973 of the Code of Civil Procedure, that certain contracts to be enforceable are required to be in writing, or that some note or memorandum thereof be in writing, subscribed by the party to be charged, or his agent. It is also equally well settled that the facts of a particular case may give rise to an equitable estoppel against the party seeking to set up the statute of frauds and foreclose such party from relying thereon. (*Seymour* v. *Oelrichs*, 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154]; *Notten* v. *Mensing*, 3 Cal. (2d) 469 [45 Pac. (2d) 198].) And likewise, while it is settled in view of section 1698 of the Civil Code which provides that a written con-

tract may be altered by a contract in writing, or by an executed oral agreement, and not otherwise, that a written contract may not be varied or modified by an executory parol agreement, nevertheless, it is also true that the facts of a particular case may give rise to an equitable estoppel against the party who denies the verbal modification.

*Seymour* v. *Oelrichs, supra,* which is the leading case in this state upon the subject of equitable estoppel, sets forth the basis of the doctrine at page 794, as follows: ''The right of courts of equity to hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed. It is based upon the principle 'thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme'. (2 Pomeroy's Equity Jurisprudence, sec. 921.) It was said in *Glass* v. *Hulbert,* 102 Mass. 24, 35 [3 Am. Rep. 418] : 'The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer but the infliction of an unjust and unconscientious injury and loss. In such case the party is held by force of his acts or silent acquiescence which have misled the other to his harm to be estopped from setting up the statute of frauds.' This statement has been accepted as setting forth a plain and satisfactory ground for equitable jurisdiction, together with a clear indication of the proper limitation of its exercise. (See 5 Browne on Statute of Frauds, sec. 457a.) In the section last cited, Mr. Browne says: 'A plaintiff . . . must be able to show clearly . . . not only the terms of the contract, but also such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agree-

ment and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, to so far alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense. After proof of this, the court may well be justified in using its undoubted power, in cases of equitable estoppel, to refuse to listen to a defendant seeking to deny the truth of his own representations previously made.' We can see no good reason for limiting the operation of this equitable doctrine to any particular class of contracts included within the statute of frauds, provided always the essential elements of an estoppel are present, or for saying otherwise than as is intimated by Mr. Pomeroy in the words already quoted, viz., that is that it applies 'in every transaction where the statute is invoked'. It is a general equitable principle, a part of the broader equitable doctrine stated in *Dickerson* v. *Colgrove*, 100 U. S. 578, 580 [25 L. Ed. 618] and quoted therefrom in *Carpy* v. *Dowdell*, 115 Cal. 677, 687 [47 Pac. 695], as follows: 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both.'' This broad rule with reference to equitable estoppel was recently reaffirmed in the case of *Notten* v. *Mensing, supra.* The latter case quoted with approval the rule stated in the case of *Anderson* v. *Hubble,* 93 Ind. 570, 576 [47 Am. Rep. 394], as follows: '' 'It is not necessary, in order to the existence of an equitable estoppel, that there should exist a design to deceive or defraud. The person against whom the estoppel is asserted must by his silence or his representation, have created a belief of the existence of a state of facts which would be unconscionable to deny, but it is not essential that he should have been guilty of positive fraud in his previous conduct . . . All that is meant in the expression that an estoppel must possess an element of fraud is that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon

. . . There need be no precedent corrupt motive or evil design.' ''

■ The undisputed facts of the instant case present, in our opinion, a proper case for the application of the rule of equitable estoppel. Prior to the expiration of the option, at a time when the plaintiff was negotiating with interested third parties for an advance to enable her to exercise the option for the repurchase of property worth five or six times the amount necessary to redeem, the defendant assured plaintiff that it would not be necessary for her to exercise her option within the given time but that for thirty days he would do nothing in the matter, implying by this statement, according to his own testimony, that he would leave the option open for that period of time. The irremediable change of position by the plaintiff in reliance upon the promise of the defendant justified the trial court in refusing to listen to the defendant seeking to deny the truth of his own representations.

In the case of *Notten* v. *Mensing, supra,* it was pointed out that at the trial the burden rested on the plaintiff to prove the oral agreement by full, clear and convincing evidence, and that if such agreement be proved by full, clear and convincing evidence, such agreement should be enforced according to its terms. As before noted, there is no question in this case that defendant in fact verbally extended the option. It is not denied. The judgment of the trial court giving effect to the agreement was, therefore, proper.

■ Appellants attack the sufficiency of the tender both upon the ground that thirty-one days had elapsed prior to the deposit of the purchase price in escrow and the option had only been extended for thirty days, and upon the ground that the plaintiff had not offered to assume the indebtedness of defendant to the Bank of America, evidenced by the promissory note signed by him after he acquired the property, and secured by the deed of trust upon the property. In view of the fact that the Gilmore Oil Company refused to advance money to the plaintiff solely by reason of the fact that the lease to Lester Lee had been placed upon the property and they could not take over the service station, taken in conjunction with the finding of the trial court, supported by evidence, that the lease given by defendant to Lester Lee, his former employee, ''was entered into fraudulently and without consideration and for the express purpose of

creating a cloud upon the title of plaintiff'', defendant is in no position to complain of a one day's delay in exercising the option. He cannot thus take advantage of his own wrong.

With reference to the assumption of defendant's liability to the Bank of America upon the note which he executed in pursuance of the agreement with plaintiff, it appears that nowhere in said agreement is there an express agreement on the part of the plaintiff to reassume said liability although there is a provision that any trust deed or mortgage placed upon the property should take priority over the option. The testimony of the district manager of the Gilmore Oil Company was to the effect that he, as representative of the Gilmore Oil Company, had prior to the exercising of the option on September 25, 1933, assured the defendant that the Gilmore Oil Company was willing to and would assume said liability, and that this was agreeable to the bank. And although the option agreement contained no express provision for the assumption of said liability, the trial court in its judgment has provided that the ''plaintiff assume the payment of the promissory note and deed of trust executed by defendant, F. M. Bailey, to the Bank of America, and save the defendants harmless therefrom''. By reason of the fact that the option agreement contained no provision for relieving the defendant of all liability upon the note and trust deed in the event of a repurchase of the property, defendant cannot now insist that plaintiff could only exercise her option by fulfilling such nonexistent requirement. We are of the opinion that the trial court in making provision in the judgment that the plaintiff assume the payment of the promissory note and deed of trust executed by defendant F. M. Bailey to the Bank of America, and save defendants harmless therefrom has gone as far as it is required to go in order to do equity under the circumstances. In view of the fact that the trust deed is a first lien upon the property and that the property is worth five or six times the amount of the indebtedness to the bank, there is little likelihood of defendant being called upon to make any payment upon his debt. As said before, if by reason of lack of foresight he has failed to include in the option agreement all of the provisions necessary to make him whole upon the exercise of the option, he cannot require as a condition precedent to the exercise of

the option, a tender of performance of said missing provisions.

We are likewise satisfied that the trial court was justified in accepting as the amount due to defendant the amount set forth by defendant in the letter of August 21, 1933, to the bank. Although defendant testified that he had expended money subsequent to that date in excess of the credit due from an application of the rent, he made no real effort to substantiate his claim, and it was denied by the plaintiff, who claimed that she did not owe the amount of $1,006.91 claimed by defendant, but was willing to accept that figure as the proper one. Under these circumstances an accounting was not necessary.

We have decided this appeal upon the issues as presented by the parties, although we are somewhat at a loss to understand why plaintiff did not seek to redeem said property as a deed absolute given merely as security, in which event she would have been entitled to redeem at any time until her right had been foreclosed by an action of foreclosure brought by the defendant.

There seems to be little doubt, in view of the written option agreement which was entered into simultaneously with the conveyance by the plaintiff to the defendant and the fact that the payment of rent was applied by the defendant to the debt owing from the plaintiff, that the conveyance from the plaintiff to the defendant was in fact a mortgage. However, this issue was neither presented to the trial court, nor argued in the briefs of the parties, although there was a passing reference in the respondent's reply brief that ''The whole transaction was intended not as an outright sale but as a conveyance for the purpose of securing to Bailey the indebtedness owed to him by Mrs. Wilson.'' In view of our holding that the option was in fact properly exercised by the plaintiff, it is not necessary for us to discuss the rights and remedies of the parties under a deed absolute which was in fact a mortgage.

The judgment is affirmed.

Thompson, J., Edmonds, J., Waste, C. J., Langdon, J., Shenk, J., and Seawell, J., concurred.