[Sac. No. 5324. In Bank.—January 17, 1940.]

TYRE H. WATERLAND, Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

Busick & Busick and O. F. Meldon for Petitioner.

Johnson & Curtright, P. H. Johnson, C. K. Curtright and Charles A. Bliss for Respondents.

Evan J. Hughes, as *Amicus Curiae,* on Behalf of Respondents.

CURTIS, J.—The sole question presented upon this application for a writ of prohibition is whether the superior court, sitting in probate, has the jurisdiction to determine, as an incident to the settling of a final account of an executor, who previous to the rendering of said account has filed his resignation as executor, title to certain personal property formerly owned by the decedent, but claimed by the said executor as his own personal property by virtue of the fact that said personal property consists of a fund on

deposit in a joint tenancy account in the names of the decedent and the executor. Or to phrase the question differently, does the filing of a resignation by an executor, who claims property in his individual capacity adversely to the estate of which he is executor, divest the superior court sitting in probate of jurisdiction to hear and determine, upon the settlement of his final accounts, title to personal property claimed by the executor, for the purpose of determining whether said executor should be required to account therefor?

The facts which give rise to the present proceeding are as follows:

Laura Antoinette Grafmiller died on the 24th day of March, 1937, leaving an estate in the county of Sacramento, and in the county of Alameda, variously estimated as of the value of about $20,000. On the 12th day of April, 1937, petitioner, Tyre H. Waterland, was appointed the executor of the last will of said decedent, and letters testamentary were issued to him. He thereafter duly qualified as such executor and entered upon his duties as such executor. Thereafter, on May 4, 1937, having become involved in a controversy with the heirs and devisees of said decedent over his claim of ownership in his own right of a bank account in the sum of $9,052.47, on deposit in the Capital National Bank of Sacramento, in a joint tenancy account in the names of himself and the decedent, he filed his written resignation as executor with the court. On the same day, Albert E. Stearns, who had been named as alternate executor in the last will and testament of said decedent, filed a petition for his appointment as executor. At or about the same time, Annie Gertrude Van Tine and Ella May Tuttle, residuary legatees under the last will and testament of decedent, filed a petition in said superior court seeking the removal of said Waterland as executor of said will on the ground of fraud and his asserted adverse interest in said fund. Thereafter, Waterland attempted to recall his resignation as executor, and resisted the application of Stearns and the two residuary legatees for his removal. The probate court refused to revoke the letters testamentary theretofore issued to Tyre H. Waterland, and two appeals were taken from said order. One appeal was taken by Albert E. Stearns from the order failing to appoint him as alternate executor of said will, and the other appeal was taken by

Annie Gertrude Van Tine and Ella May Tuttle from the order refusing to revoke the letters testamentary already issued to Tyre H. Waterland. In the opinion of the District Court of Appeal, Third Appellate District, written by Justice Plummer, deciding both appeals (*Estate of Grafmiller*, 27 Cal. App. (2d) 253 [81 Pac. (2d) 181]), the court held that, although under the common law an executor had no right to resign or relinquish his position without having first received permission of the appointing power, by virtue of the enactment of section 520 of the Probate Code, the right to resign was conferred upon an executor, and such resignation became effective without the necessity of its being accepted by the probate court, and was not thereafter subject to withdrawal. The court further held that, a written resignation having been filed by the executor, the only remaining power of the probate court was the power, under said section 520 of the Probate Code, to compel a rendition of an account by said resigning executor and to appoint a successor. The opinion concluded with the following direction to the probate court: "The cause is remanded for further proceedings in accordance with the provision of section 520 of the Probate Code relative to enforcing a settlement of his accounts by the respondent Waterland, and the appointment of his successor." During the pendency of the appeal, Waterland had continued to act as executor of the will of the decedent, and on December 29, 1937, had filed an account entitled, "Final Account of Executor and Petition for Final Distribution of Estate." The decision of the appellate court was rendered on June 23, 1938, and on August 26, 1938, Albert E. Stearns was appointed executor of the will of Laura Antionette Grafmiller, deceased. Thereafter on September 30, 1938, Waterland filed a supplemental account, entitled, "Supplemental Account of Tyre H. Waterland, as executor of the estate of Laura Antionette Grafmiller, deceased." Exceptions to said accounts were filed by Albert E. Stearns. On October 14, 1938, Waterland filed another account entitled, "Account of Tyre H. Waterland, formerly executor of the Estate of Laura Antoinette Grafmiller, deceased." Exceptions to these three accounts were filed by Albert E. Stearns, on October 17, 1938. All the accounts filed by Waterland failed to make any mention of the bank account of $9,052.47 claimed, by the residuary legatees and by Stearns, as executor, to be

part of the estate of said decedent. All of the exceptions to the accounts of Waterland specified his failure to account for this sum as one of the grounds for the objections to the accounts. On October 27, 1938, a demurrer to said exceptions and a motion to strike was filed by Waterland, based upon the ground that the probate court was without jurisdiction to determine title to the personal property in controversy. On November 7, 1938, Stearns, as executor, filed another document entitled, "Petition for an Order Requiring Former Executor to Account for Funds of Estate." Thereafter, on December 8, 1938, Waterland filed a demurrer to said petition and motion to strike upon the ground that the probate court was without jurisdiction to determine title to said bank account. On November 12, 1938, a minute order entitled, "Objections to Former Executor's Account— Demurrer to Petition Requiring Former Executor to Account for Funds and Motion to Strike Out, Etc.", was made and entered by the trial court wherein the demurrer was overruled, and the motion to strike out portions of said petition was denied. The minute order ended with the direction that the "question of delivery of certain estate property now in possession of former executor Waterland", be continued to a later date.

On December 21, 1938, Waterland filed his answer to said petition for an order requiring him, as former executor, to account for funds of the estate, theretofore filed by Albert E. Stearns on November 7, 1938. On February 16, 1938, he sought a writ of prohibition to restrain the probate court from proceeding with the hearing of said petition upon the ground that as he is now a stranger to the estate, the superior court, sitting in probate, is without jurisdiction to determine title to this personal property claimed by him in his own right adversely to the estate. No mention of the exceptions to said accounts previously filed by Stearns, as executor, is made by Waterland in his application for the writ of prohibition.

Petitioner's application for said writ of prohibition is based upon the premise that by the filing of his resignation, he immediately became a stranger to the estate, and he relies upon the rule in California that title to property cannot be tried in probate proceedings as between the estate, or heirs or devisees, and a stranger to the estate. It is conceded that this rule is well settled in California. (*Ing-*

*hilleri's Estate,* 27 Cal. App. (2d) 664 [81 Pac. (2d) 568];
*McCarthy* v. *McCarthy,* 205 Cal. 184 [270 Pac. 211]; *Bauer*
v. *Bauer,* 201 Cal. 267 [256 Pac. 820]; *Estate of Wenks,*
171 Cal. 607 [154 Pac. 24]; *Estate of Klumpke,* 167 Cal.
415 [139 Pac. 1062].)

Respondents oppose said application for a writ of prohibition upon the premise that the probate court has jurisdiction to settle the final account of an executor and until such account is settled an executor is amenable to the authority of the probate court. Respondents rely upon the rule that the superior court, in the exercise of its probate jurisdiction, may try and determine, as an incident to the final account of an executor, title to personal property claimed by the executor in his own right adversely to the estate. This rule is equally well settled in California. (*Stevens* v. *Superior Court,* 155 Cal. 148 [99 Pac. 512]; *Bauer* v. *Bauer, supra; Estate of Roach,* 208 Cal. 394 [281 Pac. 607]; *Estate of Ginsberg,* 11 Cal. App. (2d) 210 [53 Pac. (2d) 397]; *Estate of Vucinich,* 3 Cal. App. (2d) 235 [44 Pac. (2d) 567].) Does the fact that the executor, prior to rendering his final account, files his written resignation with the court, change the rule?

We are satisfied that the answer is in the negative. Section 520 of the Probate Code is the section which governs the procedure relative to the resignation of an executor and defines his liability upon resigning. The express language of this code section compels the conclusion that the superior court, sitting in probate, retains jurisdiction to settle the final account of an executor after his resignation as executor. It follows as a necessary concomitant thereto, that the said court retains jurisdiction to determine all questions necessary to be determined as an incident to the final settlement of said executor's account. Section 520 of the Probate Code reads as follows: "An executor or administrator may resign his appointment at any time, by a writing filed in the superior court, *to take effect upon the settlement of his accounts.* If, however, by reason of any delay in such settlement, or for any other cause, the circumstances of the estate or the rights of those interested therein require it, the court, at any time after the tendering of the resignation, may revoke the letters of such executor or administrator and appoint in his stead an administrator, either special or general, or with the will annexed, in

the same manner as is directed in relation to original letters of administration. The liability of the outgoing executor, or administrator, or of the sureties on his bond, shall not in any manner be discharged, released, or affected by such resignation or appointment, but shall continue until the executor or administrator has delivered up *all* the estate to the person whom the court shall appoint to receive the same.'' The provision that his resignation shall take effect upon the settlement of his accounts, can mean nothing else than that his resignation shall not become effective prior to the settlement of his accounts. It is true that there is language in *Estate of Grafmiller, supra,* which may be construed to mean that the resignation of an executor becomes effective immediately upon the filing of his written resignation. Having in mind the fact that the question there involved was whether the resignation of an executor required an acceptance by the superior court as a condition precedent to its becoming effective, and the question of whether the executor retained the right to withdraw his resignation prior to an acceptance by the probate court, it is apparent that the language employed in said opinion merely meant that the filing of the executor's resignation established the *fact* of his resignation, and deprived him of the power, from said time of filing his resignation, to withdraw his resignation. Said language was not specifically directed to the solution of the problem of the exact time the resignation became effective. If it was intended to imply that the resignation become effective *for all purposes* at the moment of its filing, such holding is directly contrary to the express language of section 520 of the Probate Code which provides that said resignation is ''to take effect upon the settlement of his accounts''.

It is also to be noted that the last sentence of said section 520 of the Probate Code provides that the liability of a resigning executor shall not in any manner be discharged, released, or affected by such resignation but shall continue until the executor has delivered up *all* the estate to the person whom the court shall appoint to receive the same. As an incident to a determination of whether or not the executor is turning over ''all the estate'' to his successor, it is necessary for the court to determine whether or not the fund claimed by the executor belongs to him in

his own right or belongs to the estate. We can see no escape from the conclusion that the probate court is the reasonable and logical forum for the determination of this question.

It may well happen that a resigning executor's active duties as executor may cease immediately upon the filing of his resignation, in which event he would not be entitled to executor's fees for work performed subsequent to the filing of said resignation. But once having accepted the duties and responsibilities, and privileges, of an executor, he cannot thereafter by filing his resignation, oust the superior court, sitting in probate, of jurisdiction to hear and settle his final accounts. By express provision, section 520 of the Probate Code provides otherwise.

As before pointed out, petitioner seeks the writ of prohibition only to restrain the probate court from hearing the petition to compel an accounting filed by Albert E. Stearns, as executor, on November 7, 1938, and wholly ignores the exceptions to said accounts theretofore filed by Stearns, as executor. It is apparent from the answer filed by the respondents that the filing of the petition to compel an accounting by the executor Stearns was a part and parcel of the objections to the final account of said resigning executor and was not intended to initiate a separate proceeding. It is also apparent from the title of the minute order made by the probate court on December 12, 1938, that the probate court was considering said objections to the accounts of Waterland as executor and the petition to compel an accounting by him at one and the same time. The title to said minute order, as previously quoted, is as follows: ''Objections to Former Executor's Account—Demurrer to Petition Requiring Former Executor to Account for Funds, and Motion to Strike Out, Etc.'' This court in determining the merits of the application for the writ of prohibition, is, of course, not bound by the petitioner's statement of the facts when the record shows a different state of facts.

To sum up: The superior court sitting in probate, is vested with jurisdiction to try and determine, on the settlement of the accounts of a former executor, questions of title to personal property claimed by such former executor, adversely to the estate, and the resignation or removal of such executor does not divest the superior court, sitting in pro-

bate, of jurisdiction as long as the matter of said accounts remains pending.

The writ of prohibition is denied.

Shenk, J., Edmonds, J., Gibson, J., Carter, J., and Waste, C. J., concurred.