[Civ. No. 12966. First Dist., Div. One. Mar. 21, 1946.]

Estate of JAMES N. GILLETT, Deceased. ISABELLA GILLETT, Individually and as Executrix, Appellant, v. EFFIE G. NEWTON, Individually and as Executrix, Respondent.

Hart H. North for Appellant.

Elliott Johnson and John L. Reith for Respondent.

SCHOTTKY, J. pro tem.—James N. Gillett, former Governor of California, died April 20, 1937. He was survived by his widow, the appellant herein (whom he married in 1898), and by a son and two daughters by a former marriage, one of which latter is the respondent. By his will and codicil thereto he bequeathed $5,000 and his law library to his son. The will declares that all of his property except certain lots in Eureka was community property, and his portion thereof and all his separate property he gave and devised to his daughters, two-thirds to the respondent Effie G. Newton and one-third to Ethel Whitehorn, the other daughter. The estate amounts to some $200,000. Appellant and respondent were appointed executrices of the will.

The will was admitted to probate, two accounts were rendered and settled, and partial distribution was had. Final distribution of the estate was delayed by reason of certain litigation not involved here. On June 18, 1943, the appellant, Isabella Gillett, filed her third and final account and report and petition for final distribution. Respondent Effie Newton did not join in this petition, but filed objections to the final account, the one involved on this appeal being "the failure of said Isabella Gillett, as Executrix, to account to said estate, or otherwise, for the sum of $5000, or any part thereof, received by her pursuant to the cashing of a certain check for $5000 from the account of said deceased on or about the date of the death of said deceased." This was the first time that the check had been mentioned by respondent in any proceeding in the matter of the estate.

When the objections came up for hearing in the probate court, the matter was referred to a referee and a full hearing had before him. In view of the fact that the court adopted the report and findings of the referee as its own findings, we shall set forth the portion of said report relating to the objection hereinbefore set forth and involved in this appeal.

"In substance, the evidence showed that several months prior to the death of James N. Gillett, deceased, he signed a blank check and gave it to his wife, Isabella Gillett, without the date, payee or amount of money being filled in, the check bearing only his alleged signature. This check was on an account belonging to the deceased in the Anglo California National Bank of San Francisco. The evidence showed that this check was for the specific purpose of repaying to Mrs. Gillett loans which Mrs. Gillett claimed she had advanced at

the request of the deceased to J. F. Whitehorn, the husband of the deceased's daughter by a previous marriage, and for the specific purpose of building an elevator in the house.

"The Federal Estate Tax Return, filed by the executrices, one of whom was Isabella Gillett, with the United States Government on or about January 12, 1938, lists in Schedule G, referring to transfers during decedent's life, the following:

" 'On April 9, 1937, the deceased gave to his wife, Isabella Gillett, the sum of $5000 for the following purposes, to-wit:

" '$2000 in payment of a like sum previously advanced by her for his account and at his instance and request; $3000 to be used in making changes in their residence, her property; to-wit, building a passenger elevator.' . . .

"Mrs. Gillett in her testimony before the Referee stated, in effect, that the $2000 advancement was made to her step-son-in-law at the request of her husband, the deceased, when he felt that Mr. Whitehorn would probably repay the money loaned by Mrs. Gillett while he would not repay the sums if loaned by the deceased, who had advanced large sums of money to his son-in-law over a considerable period of time and had never been repaid for any of these loans. There was admitted into evidence a copy of a promissory note, dated July 28, 1934, in the sum of $1515, payable to the order of Mrs. J. N. Gillett, and signed by J. F. Whitehorn. Isabella Gillett testified that there was an original loan, dated July 28, 1930, in the sum of $1000; that there was interest at 6% due to July 28, 1934 in the sum of $240.00, and a loan made on July 12, 1932, in the sum of $275.00, all of which were included within this July 28, 1934 note of $1515.00. Mrs. Gillett testified that the amount of $1275 advanced by her, being the $1515.00 note less the $240.00 interest, was the only advancement contained in the $2000, as set forth in the Estate Tax Return. She did not explain the discrepancy between this sum of $1275 and the $2000 stated in said Return.

"The evidence also showed that on the 28th day of July 1930, the deceased paid to Isabella Gillett the sum of $1025 which Mrs. Gillett testified possibly could have been the repayment to her of the $1000 advanced by her at the deceased's request on said July 28, 1930. She would not deny that this repayment was so made to her. The evidence further shows that on July 20, 1932, the deceased reimbursed Isabella Gillett in the amount of $900, the check stub bearing the notation 'House expense, J.F.W., Dr. B. ac', the J.F.W. being the

initials of Mr. Whitehorn, the deceased's son-in-law, and Isabella Gillett testified that it was possible that in the $900 was the $275 which she had advanced to the son-in-law on July 20, 1932. She would not deny that such was the fact. There is further evidence that, due to many requests which the son-in-law had made upon the deceased for money, Isabella Gillett and the deceased arranged a plan between themselves whereby, instead of the deceased making advances to the son-in-law, Isabella Gillett should make the advances and they felt that would restrict the amount of money which the son-in-law would thus be able to obtain. This plan was carried out and, as the deceased from time to time reimbursed Isabella Gillett for expenses advanced, the inference is very strong and the Referee concludes, that the $1000 and the $275 thus advanced by Isabella Gillett to the son-in-law were repaid to Isabella Gillett by the deceased on July 28, 1930 and July 20, 1932 respectively. It is therefore concluded, that the $2000 out of the $5000 claimed by Mrs. Gillett to have been a repayment to her of the moneys advanced to the son-in-law was in fact only $1275, and that it had previously been repaid to her by the deceased and that, therefore, the entire $2000 was an asset of the deceased's estate at the time of his death.

"There was introduced on behalf of Mrs. Gillett, an alleged copy of a letter sent to J. F. Whitehorn, which Hart H. North states is entirely in the handwriting of the late Mr. Gillett, and is dated January 27, 1937, which carries the statement, 'The letter Mrs. Gillett wrote to you will show how much you owe her, which is, as I remember, a little over $1700.00.' This was introduced for the purpose of showing that the deceased admitted that there was a sum of money still owing from Mr. Whitehorn to Mrs. Gillett. Your Referee, however, does not feel that this is conclusive, for Mr. and Mrs. Gillett had agreed upon a plan whereby Mrs. Gillett was to theoretically loan the money and make Mr. Whitehorn believe this, with the hope that Mrs. Gillett would have a better chance of collecting than Mr. Gillett would, and this alleged copy of a letter by Mr. Gillett to Mr. Whitehorn can mean no more than the fact that up to January, 1937, Mr. Gillett was still continuing with the original plan agreed upon between him and his wife. There is nothing in the letter, or in the evidence, which shows that the deceased had not previously reimbursed Mrs. Gillett for the money advanced by her to Mr. Whitehorn.

"Regarding the remaining $3000 of the $5000 check, she stated in her Estate Tax Return that this $3000 was to be used in making changes in their residence, her property, to-wit, building a passenger elevator. Mrs. Gillett testified that to date, more than six years after her husband's death, she has not built that elevator; and, when questioned as to whether she had ever obtained estimates on the cost of such an elevator, she stated that they had never received an absolute estimate, but they believed it would cost $2000. Here, again, there is a discrepancy of $1000 in what she herself estimates the elevator would cost and the $3000 she specified in the Estate Tax Return. Further, as has already been stated, this elevator has not been built, and there is no evidence to the effect that she is going to build it at any time in the future. Your Referee, therefore, concludes that she has also failed to establish her right to the $3000 for the purposes which she specified, and that it is an asset of the estate.

"In connection with the $5000 check, she testified that the check was signed many months—more than five—before the deceased's death; that at the time the check was filled in she had no further conversations with the deceased about the check; that a few days before the deceased's death, she filled in the blank check in her own handwriting with the date, the amount of $5000 and herself as payee, and that the check cleared through the bank on which it was drawn on the date of his death.''

Following the filing of the referee's findings and report the court in its decree of settlement of final account and of final distribution adopted the same as its own findings, and ordered that appellant pay to said estate said sum of $5,000 together with interest at 7 per cent per annum from April 20, 1937, or that said amount be deducted from her distributive share of said estate.

This appeal is from said decree, and the question involved is whether or not the court erred in requiring appellant to pay the said sum of $5,000 to the estate. The appeal is presented upon a settled statement.

Appellant makes two main contentions, which are: "1. That the referee erred in overruling the objection of counsel to the examination of appellant as to communications and conversations between herself and her deceased husband; 2. That the evidence is absolutely insufficient to support the findings

of the referee which were approved and confirmed by the trial judge.''

█ Appellant makes an earnest argument in support of her contention that the referee erred in overruling appellant's objections to her examination as to communications between herself and her deceased husband. She quotes the following portion of section 1881 of the Code of Civil Procedure: ''There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: 1. A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband, without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; . . .'' However, appellant fails to quote the clause of section 1881 following the above quotation, which reads as follows: ''. . . but this exception does not apply to a civil action or proceeding by one against the other. . . .''

Appellant also cites numerous cases stating the well settled rule that communications between husband and wife are privileged, but, as pointed out by respondent, each of these was either an action between a stranger and one of the spouses, or a criminal case, and was not an action ''by one against the other.'' We do not believe that either reason or authority justifies appellant in her apparent assumption that the instant proceeding is not by one spouse against the other, because it seems clear to us that a proceeding in which the estate of the husband is asserting and the wife is resisting a claim of the estate against the wife, is an action or proceeding by one spouse against the other within the meaning of section 1881.

This view is supported by the case of *Savings Union Bank & T. Co.* v. *Crowley,* 176 Cal. 543 [169 P. 67], which was an action by the executor of an estate to collect dividends on certain stock held by the widow. The widow testified that the stock was delivered to her as security for four notes given to her by her husband as evidence of his indebtedness to her. The Supreme Court said (p. 547): ''The remaining point made by appellant is that the court erred in permitting respondent to testify to declarations of her husband concerning the delivery of the notes and certificates of stock to her, on the ground that by the law of this state neither spouse can,

without the consent of the other, testify as to any communications made by one to the other during marriage, citing section 1881, subdivision 1, of the Code of Civil Procedure. Respondent contends that no decision in this jurisdiction has extended the restriction beyond confidential communications, and by reason of the freedom of contract between husband and wife either should be allowed to testify freely to business communications. Section 1881 declares that the rule there stated excluding testimony by one spouse of declarations by the other made during marriage 'does not apply to a civil action or proceeding by one against the other.' The Civil Code (section 158) provides that 'either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried.' *The protection of the right to contract with each other respecting their separate property requires that each should be allowed to testify concerning such contracts, in case of an action between them thereon. This is such an action or proceeding within the meaning of section 1881, and the prohibition therein does not apply.* Under that section the wife can testify to communications made to her by her husband constituting the contract between them, or affecting her rights thereunder. *Emmons* v. *Barton,* 109 Cal. 669 [42 P. 303], was not a case of that character, and what is there said has no application here." (Italics added.) The case just quoted from was cited and followed in *Durrell* v. *Bacon,* 138 Cal.App. 396 [32 P.2d 644]. That was an action by a surviving husband against the administrator of his deceased wife's estate to quiet title to real property which had been deeded to the wife by a third person as her separate property, and it was held that parol evidence that the property was purchased with both separate and community funds under an agreement that it should be community property, was admissible. The opinion states (p. 403): "Appellants also complain that the conversations between Mr. and Mrs. Durrell were privileged communications under the provisions of subdivision 1 of section 1881 of the Code of Civil Procedure. *Savings Union Bank etc. Co.* v. *Crowley,* 176 Cal. 543 [169 P. 67], we believe, is analogous in this behalf to the present case and is authority for the admission of the evidence objected to in this case."

Also in *Tobias* v. *Adams,* 201 Cal. 689 [258 P. 588], an action by the administrator of the estate of a judgment creditor

to set aside certain conveyances made by a husband to his wife which it was claimed were made in fraud of creditors, the defendants, the husband and wife, set up in their answer a written contract by which the husband had relinquished certain property to the wife, and it was held that by pleading the agreement and introducing evidence upon it, the defendants had waived the privilege. There the court said (p. 700) ; "Besides, the communications stricken out in this case were not such communications as are privileged, anyway. (*Poulson* v. *Stanley*, 122 Cal. 655, 658 [68 Am.St.Rep. 73, 55 P. 605] ; *Savings Union Bank etc. Co.* v. *Crowley*, 176 Cal. 543, 547 [169 P. 67].)"

In support of her contention that the evidence is insufficient to support the findings, appellant makes the following subpoints: (1) The presumption is that deceased intended to make a gift to appellant of the amount of the check. (2) Fraud is never presumed, and every presumption is in favor of fair dealing. (3) Since the fund was community property, appellant is under no obligation to pay the amount of the check to the estate. (4) The referee and the trial court were not at liberty to disregard uncontradicted testimony. These points are all interrelated and will be covered by our discussion of the sufficiency of the evidence.

The check involved here was admittedly signed in blank by deceased. Section 3095 of our Civil Code (which is in conformity with the Uniform Negotiable Instruments Law) provides: "Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time."

In *Madden* v. *Gaston*, 137 App.Div. 294 [121 N.Y.S. 951], the court said (p. 952 [121 N.Y.S.]) : "The production of the checks by the plaintiff raised a presumption of a valid and intentional delivery of them to her by the maker. Section 35 of the Negotiable Instruments Law (chapter 38 of the Consolidated Laws.) Such delivery operated as prima

facie authority to fill up the blanks for any amount. Section 33 of the Negotiable Instruments Law. The learned trial court was, therefore, wrong in holding that it was incumbent upon the plaintiff to prove her authority to fill up the blanks, *as the statute imposes the burden upon the defendant to show the agreement, and that its terms have been violated, if that be claimed . . .*'' (Italics added.) (See other cases cited in 5 U.L.A., Part 1, § 14, p. 153.)

And in *Davidson* v. *Lanier*, 4 Wall. (71 U.S.) 447 [18 L.Ed. 377], the Supreme Court of the United States said (p. 456): ''The delivery of a bill of exchange signed and indorsed in blank only authorizes the receiver, as between himself and the drawer and indorser, to fill it up in conformity with the authority given him. If there has been no agreement, the authority is general; if there has, it must be pursued. The burden of proof that there was an agreement, and that its terms have been violated is, in such a case, upon the defendant; but if he can make the proof it will avail him.''

We believe, therefore, that under said section 3095 of the Civil Code, when it appeared that Governor Gillett had delivered to appellant a check signed in blank and she thereafter filled it in for the sum of $5,000, there arose a rebuttable presumption that she had authority to fill it in for that amount. It then became the burden of the respondent to overcome that presumption. If there is in the present record evidence that is sufficient to sustain the finding that appellant had no such authority, then the decree appealed from must be affirmed.

We have hereinbefore set forth the report of the referee. We have studied the record carefully and believe that the facts set forth in said report are supported by the record. The appellant was the only witness who testified with reference to the check involved in this appeal. Appellant argues that her testimony was uncontradicted and unimpeached and that the referee was not justified in rejecting it and that ''the record is destitute of any evidence that, at the time of the delivery of the check, the deceased was of unsound mind, that any fraud or undue influence was practiced upon him, or that the appellant received the check otherwise than as a conveyance 'without any strings to it.' ''

The referee held that appellant's testimony ''was vague,'' ''inconsistent and evasive,'' and that her answers were ''indirect and parrying.'' He also attached considerable impor-

tance to the fact that the check, although shown to have been in the possession of appellant during the administration of the estate, was not produced at the hearing, although its production was demanded. For these reasons the referee stated in his report that he disbelieved the testimony of appellant.

It is a rule too well established to require the citation of authorities that when a judgment is attacked as being unsupported by the evidence, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court or jury. And where two or more inferences can reasonably be deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.

While it is true that the burden was upon respondent to show that appellant had no authority to fill in the blank check for $5,000, we cannot hold, upon the record here, that there is no substantial evidence to support the finding of the referee and the decree of the court. Appellant testified and the estate tax return signed by her stated that $2,000 of the $5,000 was to repay her for moneys she had loaned to the son-in-law of the deceased at his request, but check book stubs which were in appellant's writing were sufficient evidence to justify the referee in inferring that appellant had been reimbursed by deceased for these loans long prior to the time she received the blank check. From this the referee had a right to conclude that the deceased had given appellant no authority to include the $2,000 in the amount of the check. As to the remaining $3,000 which made the check's total $5,000, the estate tax return stated and the testimony of appellant was that the $3,000 was included in the check for the purpose of building a passenger elevator in the family residence. However, at the time of the hearing, which was at least six years after she received the check, the elevator had not been built and there was no explanation of the delay or any testimony that she intended to build it. Furthermore, appellant at no time testified as to what the deceased told her at the time he gave her the check as to its purposes or as to the amount for which it should be filled out, her counsel objecting to her answering such questions. She did, however, testify that she had no further conversation with the deceased at the time she filled in the check. Again in one portion of her testimony, in

answer to questions by her own counsel, appellant testified: "Q. Mrs. Gillett, was this $5000 received by you from Governor Gillett based on any claim that you had against him? THE WITNESS: A. As I understood it, Mr. North, it was a voluntary presentation. Q. Well, you made no claim against him? A. No, I had not been making any claim against him." In another part of her testimony appellant stated: "I think that I have said that I believe that my husband may have had many thoughts in his mind when he gave me that—— I think you call it—— a blank check. I believe I felt I was entitled to something. In a way, he was giving his money away so lavishly, and my husband and I lived very simply at home. We didn't have the luxuries of some people, and I feel that, all things considered, he just had a feeling that he—— I believe that my husband thought in a way, this is only a belief on my part because he was very loath to express some things, and I think my husband may have had in his mind the thought that his course in some respects had not been fully ethical. . . ."

It is apparent that counsel for appellant had adopted the theory that any statements made by deceased relative to the check were inadmissible, and had based his entire defense of appellant's action in filling in and cashing the check upon that theory. At the hearing before the referee he objected constantly to such questioning and even advised appellant to decline to testify. This attitude caused the hearing to be continued several times and prolonged it unnecessarily, and in view of the fact that the referee correctly concluded that such statements were admissible, it is only natural that the refusal of appellant to testify freely as to them would be calculated to excite the suspicion and distrust of the referee. It may well be that if appellant had in simple and direct language freely related all of the conversations and discussions between deceased and herself relative to the check, she might have convinced the referee that she was authorized to fill in the check as she did. However, we must take the record as we find it, and while we may feel that appellant might have been placed in a more favorable light in the hearing before the referee, yet having in mind the limited function of an appellate tribunal, we cannot say that the findings of the referee and the trial court lack substantial support in the record.

■ We deem it unnecessary to dwell upon appellant's statement that the record is destitute of any evidence that at the time of the delivery of the check the deceased was of unsound mind or that any fraud or undue influence was practiced upon him. The objection to the account was that appellant had failed to account to the estate for the $5,000 received by her pursuant to the cashing of the check. The referee found that appellant was not authorized by deceased to fill in and cash said check and that her action in doing so was a conversion of the assets of the deceased, and the judge of the probate court confirmed and adopted said finding. It was not necessary to prove unsoundness of mind, fraud, or undue influence in order to show that the action of appellant in filling in and cashing the check was unauthorized, and no attempt was made to do so.

■ Nor do we deem it necessary to dwell upon the claim made by appellant for the first time in her closing brief, that respondent is barred by laches. This is not a case of controversy between two individuals but is a matter of an executrix accounting to the estate which she is administering. In such a proceeding the claim of laches cannot be sustained.

■ One other point may require clarification. It is intimated, but not urged, by appellant, that there may be some doubt as to whether or not the superior court sitting in probate had jurisdiction to pass upon the question of appellant's right to the proceeds of the check upon the settlement of the account. It is, of course, the rule in California that title to property cannot be tried in the probate proceedings as between the estate or heirs or devisees, and a stranger to the estate. (*Estate of Inghilleri,* 27 Cal.App.2d 664 [81 P.2d 568]; *McCarthy* v. *McCarthy,* 205 Cal. 184 [270 P. 211]; *Bauer* v. *Bauer,* 201 Cal. 267 [256 P. 820]; *Estate of Wenks,* 171 Cal. 607 [154 P. 24]; *Estate of Klumpke,* 167 Cal. 415 [139 P. 1062].) But it is equally well settled in California that the superior court in the exercise of its probate jurisdiction may try and determine, as an incident to the final account of an executor, title to personal property claimed by the executor in his own right. In *Estate of Roach,* 208 Cal. 394 [281 P. 607], the Supreme Court said (p. 395): "It is now well settled that the court, sitting in probate, is clothed with jurisdiction to hear and determine as against an administratrix the amount of money or property of the estate that has come into her hands, for the purpose of charging her therewith, and

in determining that question to determine all issues necessarily incidental thereto. (*Stevens* v. *Superior Court*, 155 Cal. 148 [99 P. 512]; *Estate of Fulton*, 188 Cal. 489 [205 P. 681]; *Bauer* v. *Bauer*, 201 Cal. 267 [256 P. 820, 821]; *Estate of Kelpsch*, 203 Cal. 613 [265 P. 214].) In the case of *Stevens* v. *Superior Court, supra,* where an executor alleged that the testator, prior to death, had transferred certain money to him in his individual capacity, which he claimed as his individual property, it was held that the probate court had power to determine the title." (See, also, *Bernhard* v. *Bank of America*, 19 Cal.2d 807 [122 P.2d 892]; *Waterland* v. *Superior Court*, 15 Cal.2d 34 [98 P.2d 211]; *Stevens* v. *Superior Court*, 155 Cal. 148 [99 P. 512]; *Bauer* v. *Bauer, supra; Estate of Ginsberg*, 11 Cal.App.2d 210 [53 P.2d 397].)

In view of the foregoing the decree of settlement of the third and final account and of final distribution is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied April 20, 1946, and appellant's petition for a hearing by the Supreme Court was denied May 16, 1946.