[Civ. No. 15813. Second Dist., Div. One. Dec. 2, 1947.]

AUTORO SPATES, as Administrator, etc., Appellant, v. TOMESUE BREWER et al., as Executors, etc., Respondents.

Gordon, Ragland & Porter and Walter L. Gordon, Jr., for Appellant.

Ovila N. Normandin for Respondents.

WHITE, J.—This is an appeal by plaintiff from a judgment for defendants in an action to establish a trust in certain real property. The suit was instituted by Harry Spates against the executors of the estate of his deceased wife, Chancey Spates, and the beneficiaries under her will. Upon the death of Harry Spates pending the appeal, his administrator was substituted as plaintiff and appellant.

In the amended complaint it was alleged, in substance, that between 1935 and 1945, Harry Spates advanced to his wife various sums approximating $5,000, which sums were community property of the parties, for the purpose of acquiring the real property in dispute; that title to the property was taken in the name of the wife solely for convenience, and that in fact the property was community. The prayer of the complaint was that plaintiff be adjudged the owner of a one-half interest in such property and that defendants be declared constructive trustees thereof.

The sole ground upon which a reversal is sought is that the evidence is insufficient to sustain the findings and

decision of the trial court. Harry Spates testified that in the latter part of 1936 he and his wife contemplated purchasing the property in question; that the owner thereof refused to sell to a negro, but that Mrs. Spates, "she being so fair, there was no question about her"; that Mrs. Spates said that "she would sign over the community deeds" when the property was paid for; that she told him on several occasions she would put the property in his name; that he gave his wife all the money he made after they married; he would give her hundreds of dollars at a time; that he sold his car for $500 and gave her that to apply on the monthly payments on the property.

Contradicting plaintiff's testimony, however, it was brought out that at the time of the marriage, Mrs. Spates owned as her separate property a residence in San Francisco and income property in Petaluma from which she received a substantial income; that at the time of the purchase of the' property in question she had a term savings account; that at or about the time the down payment of $2,536.35 was made, she withdrew $2,400 from the savings account. The payments made on the property, at the rate of $90 per month, were all made by checks drawn by Mrs. Spates on her separate commercial account in a branch of the Security-First National Bank. No payments were made by plaintiff. The deed named as grantee "Chancey Spates, a married woman, as her sole and separate property." The grantor, Mr. Butterworth, testified that the property was not restricted against the colored race, and that whether the buyer was white or colored had no influence on him in making the sale. Harry Spates did not at any time demand that his wife convey him an interest in the property. He could not name any specific sum which he claimed to have given his wife nor the dates upon which he had given her any sums, with which to purchase the property. He produced no receipts or cancelled checks. Mrs. Spates told her granddaughter that the property was hers (Mrs. Spates'). She gave the deed to her daughter for safekeeping.

During their married life Mr. and Mrs. Spates frequently separated. Between 1936 and 1945, Mrs. Spates instituted four divorce actions, and in her complaint in each case alleged that there was no community property. Mr. Spates was personally served with summons and complaint in three of these cases; he made no appearance in any of them; an interlocutory judgment was entered in one case, but the action was sub-

sequently dismissed by stipulation. In an action commenced in San Francisco in December, 1944, Mr. Spates was personally served with process but did not appear, and both an interlocutory judgment and a final judgment were entered.

From the foregoing recital it is manifest that the appeal herein is without merit. There was substantial evidence to support the conclusion of the trial court that the property was the separate property of the deceased, purchased with her separate funds. The power of this court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion of the trier of fact; and where two or more inferences can reasonably be deduced from the facts, this court is without power to substitute its deductions for those of the trial court. (*Estate of Gillett,* 73 Cal.App.2d 588, 598 [166 P.2d 870].) The trial court was not bound to believe Mr. Spates' version of the conversations with his wife, nor his vague statements with reference to money furnished by him, nor the unconvincing evidence of his corroborating witnesses. As early as 1938, Mr. Spates was informed of his wife's contention that there was no community property, yet he made no claim that the property in controversy was community until his wife had been silenced by death in 1945. Our examination of the transcript, which includes evidence which it is not necessary to here set forth, impresses us that the trial court could not but conclude that, instead of the situation being one in which the husband furnished funds to the wife, exactly the contrary was true. The case presented by the plaintiff was properly found to be wholly inadequate to overcome the presumption, under section 164 of the Civil Code, that the property was conveyed to Mrs. Spates and held by her as her separate property. The evidence is ample to support the view that the husband agreed to the acquisition and holding of the property as the separate property of the wife; that he was guilty of laches in asserting his claim, and that his cause of action is barred by the provisions of section 343 of the Code of Civil Procedure.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 29, 1948.