[Civ. No. 4018.   Fourth Dist.   May 26, 1950.]

H. L. SCHUSTER, Appellant, v. DONALD BOWEN, Respondent.

Dorsey, Campbell & Bultman for Appellant.

Schmidt & Catalano for Respondent.

SHEPARD, J. pro tem.—Action to recover money paid to defendant by check signed in blank and filled in by defendant.

Defendant, in the years 1945 and 1946, acted as employee, manager, joint operator and financial supporter of certain farm properties of plaintiff. Plaintiff at various times became indebted to defendant for unpaid wages, money advanced by defendant to plaintiff for farm operations of plaintiff, money loaned, crop shares, and farm machinery belonging to defendant and sold by plaintiff for his own account. Partial payments were made from time to time but a complete and final settlement had not been made up to the time the event occurred upon which this action is based.

The first part of July, 1946, plaintiff went on a fishing trip and before leaving said to defendant:

"I will sign a blank check and give it to you for protection in our dealings."

Plaintiff did sign the check and handed it to defendant *without any other direction* as to what amount should be filled in. Defendant laid the check away and nothing further was said about it until after 30 June, 1947, on which date defendant filled it in for $6,850 and cashed it at plaintiff's bank.

Plaintiff sued to recover the full amount of the check, contending at the trial that the check had been stolen and also contending that it had been filled in for an excessive amount and that it had not been cashed within a reasonable time. These issues were all decided against plaintiff by the trial court and judgment was rendered for defendant.

On appeal plaintiff urges only the two points last above mentioned, that is, plaintiff contends that the evidence conclusively shows that the check was filled in contrary to and in excess of the instructions of the maker and that an unreasonable lapse of time was allowed to expire before the check was cashed.

In order to better understand the contentions of the parties a brief résumé of the major phases of the financial transactions of the parties is desirable. Defendant started work for plaintiff 3 February, 1945, at $200 per month. During the following two years he loaned $3,000 at one time and $3,600 at

another time to plaintiff. He made advances for labor in the total amount of $8,000 or $9,000. His own wages were at times allowed to accumulate unpaid. He had a joint interest with plaintiff in 80 acres of potatoes which potato crop plaintiff sold for his own account creating a credit in favor of defendant thereby in the amount of $4,500. He had a joint interest with plaintiff in the corn raised on the same 80 acres. He testified the corn was in the amount of 104 tons and was of a value of $62 a ton or $6,448, and that the deductible expenses left a net value on the corn crop of $3,700, making $1,850 defendant's share. Plaintiff sold this corn for his own account and claimed that there were in fact only 84 tons and that not all of it was sold for $62 a ton. Plaintiff sold for his own account certain farm machinery belonging to defendant. The value of defendant's net interest therein was $6,375. Defendant claimed that at one time he made an advance of several hundred dollars for plaintiff's personal expense on a pleasure trip. In 1946, plaintiff and defendant agreed that in 1947, they would farm, on a 50-50 basis, the 320 acres they were then operating. Some months later a discussion was had between them relative to the possibility that plaintiff might sell this acreage. Defendant testified that plaintiff promised to pay defendant the sum of $5,000 if the plaintiff made the sale. This apparently was intended to compensate defendant for the termination of the agreement to farm this acreage in 1947 as a joint venture or partnership. Defendant testified this promise was repeated on other occasions both in the fall of 1946 and in the spring of 1947. There is some circumstantial corroboration of parts of defendant's description of this transaction. Plaintiff denies the promise. Plaintiff did sell the farm in October, 1946. All details of the sale of farm machinery to the buyer of the acreage were not completed until early in 1947. This was the machinery in which defendant had an interest of $6,375, and which plaintiff sold for his own account. About May or June of 1947, the plaintiff stated to defendant he had been offered $62 a ton for the corn, was going to Bakersfield to see about the sale, and would be back later to settle with defendant. He did not return and after defendant had waited some weeks he became impatient for a settlement, added together the $5,000 promised for the termination of the 1947 joint venture farm agreement, and the $1,850 he felt was his share of the corn, making a total of $6,850, filled the check in for that sum and cashed it.

Taking first the plaintiff's contention that the evidence conclusively proves that the defendant filled the check in contrary to the maker's instructions and for an excessive amount.

Civil Code, section 3095, reads as follows:

"Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

The burden of proof in this case is on the plaintiff. "On appeal the evidence is not weighed but the court views the proof most favorable to respondent." (*Morrison* v. *Willhoit*, 62 Cal.App.2d 830, 836-8 [145 P.2d 707]; *Estate of Gillett*, 73 Cal.App.2d 588, 596-7-8 [166 P.2d 870].) ▆ Since there was no agreement that any specific sum was to be filled in the authority given was general in respect to the right to fill the check in to protect defendant in the dealings of plaintiff and defendant. (*Davidson* v. *Lanier*, 4 Wall. (U.S.) 447 [18 L.Ed. 377].) The contention is made that the $5,000 promised in case the plaintiff sold the farm is without consideration since the agreement to farm on a 50-50 basis in 1947 was not to be performed in one year and was therefore void under the provisions of Civil Code section 1624. Again, it must be remembered that the burden of proof was on the plaintiff to show the invalidity of defendant's agreement. (*Estate of Gillett, supra.*) No attempt was made by plaintiff to question the defendant on whether or not he had foregone or been prevented from the securing of other farm arrangements, whether he had started financial arrangements for the 1947 farming, or what he had done relative to the 1947 agreement. There is some indication, in any event, of upset plans, even though we disregard the plaintiff's burden, because defendant's farm machinery was sold to the new buyer under a new arrangement.

Fundamentally, however, the law does not forbid a man to give a blank check and couple it with general authority. If, after its use, the maker seeks to recover, it is our view that the burden should be on the giver to show that the payee was guilty of some sort of fraud vitiating the gift. In this connection it is again worth noting that our courts have consistently held 'that the statute of frauds is a shield and not a sword. (*Wilson* v. *Bailey,* 8 Cal.2d 416, 422 [65 P.2d 770].)

We cannot say, under the evidence that the trial court was compelled to find defendant guilty of fraud in using the $5,000 item as a part of the total of the check and from an examination of the entire case we conclude that the evidence is sufficient to support the court's refusal to find that the defendant did not have authority to fill in the amount of the check as written.

On the subject of defendant having waited an unreasonable length of time, we again are confronted with the rule that evidence must be construed most strongly in favor of the judgment of the trial court. (*Estate of Gillett, supra,* p. 598.)

In the case at bar we have a check given "for your protection in our dealings." The giver may have had in mind "While I am away on my fishing trip" but the evidence does not show that, and the determination of what was intended was one for the trial court to make. The parties were in a series of overlapping financial transactions, a part of which were still uncompleted when the check was finally cashed. From the existence of these continuing financial relations the trial court may justifiably have believed that the check was to be retained for use during the time that these financial relations remained unsettled.

" 'A blank in a negotiable instrument must be completed within a reasonable time (sec. 3095, Civ. Code). The determination of the question of what is a reasonable time depends upon the facts of each particular case . . . and the trial court's determination . . . will not be disturbed on appeal if there is substantial evidence to sustain such finding . . .' " (*Smith* v. *Lagerstrom,* 34 Cal.2d 858, at 861 [215 P.2d 450].)

We conclude that under the peculiar circumstances of this case the trial court was justified in refusing to find that the check was retained for an unreasonable length of time.

The judgment is affirmed.

Griffin, Acting P. J., and Mussell, J., concurred.